**In re NATIONAL ENTERPRISES, INC., Debtor.**

**NATIONAL ENTERPRISES, INC., Plaintiff,**

**v.**

**The KOGER PARTNERSHIP, LTD., Defendant.**

Civ. A. No. 3:91CV00267.
Bankruptcy No. 90–3022–S.
Adv. No. 91–3022–S.

United States District Court,
E.D. Virginia,
Richmond Division.

June 26, 1991.

Jacob Paul Stroman, IV, James Joseph Burns, William Harry Schwarzschild, III, Gregg Robert Nivala, Williams, Mullen, Christian & Dobbins, Richmond, Va., for debtor and plaintiff.

Mary Lloyd Sinnott, John Daniel Epps, Stanley Knight Joynes, III, LeClair, Ryan & Joynes, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This action is before the Court on the Defendant's Motion to Withdraw the Reference of this action to the bankruptcy court. The Defendant also has asked that the Court rule on its request for a jury trial.

## BACKGROUND

The Complaint alleges that National Enterprises, Inc. ("NEI") and The Koger Partnership ("Koger") are parties to a lease agreement, dated June 28, 1990, under which Koger leased to NEI a piece of property. Prior to inception of NEI's tenancy, Koger made certain improvements to the property for NEI's benefit. Under the agreement, to insure that Koger would recoup a portion of these initial tenant improvement expenditures in the event of NEI's insolvency, the lease required NEI to post a letter of credit with Crestar Bank in the amount of $122,800.00. NEI was to amortize this amount over the 60 months of the lease posting an additional 1/60th of the amount, or $2,046.67, each month. The lease authorized Koger to draw on the letter if NEI failed to pay rent or failed to timely renew the letter of credit.

In December 1990, NEI filed for Chapter 11 protection and ceased increasing the amount posted in the letter of credit. Koger subsequently noticed NEI that it was in default of the provisions of the lease agreement and on February 21, 1991, presented a draw order on the letter of credit to Crestar Bank. The bank, in turn, tendered its cashier check in the amount of $122,800.00 to Koger. The Complaint alleges that Crestar then sought release from the automatic stay in bankruptcy to liquidate a certificate of deposit which it held as security against the letter of credit.

In March 1991, NEI filed the Complaint in this action, alleging that Koger's presentation of the draw order breached the lease agreement by making an unauthorized draw on the letter of credit. The suit was filed in the bankruptcy court and is now before this court on Koger's Motion to Withdraw the Reference so as to place the proceedings before this Court. Koger, in a related argument, also asks the Court to affirmatively grant it the right to a jury trial.

## DISCUSSION

Koger requests that the Court withdraw the reference of this action from the bankruptcy court and that the Court recognize its claimed right to a jury trial. Koger presents a complex argument, linking these two issues, that depends not only on the characterization of the action as either a "core" or "non-core" bankruptcy proceeding, but also on Koger's claimed right to a jury trial. These questions strike at the heart of numerous "open" and hotly contested issues in bankruptcy law today. The Court will attempt to give these the attention that they are necessarily due.

### I. *Whether this Action is Core*

The starting point for an analysis of whether this action properly falls within the jurisdiction of the bankruptcy court must be the jurisdictional limits placed on the bankruptcy court by the Bankruptcy Code. The Code grants bankruptcy courts the right to "hear and determine all cases under title 11, and all core proceedings arising under title 11, or arising in a case under title 11 ... and [to] enter appropriate orders and judgments...." 28 U.S.C. § 157(b)(1). The Code also allows bankruptcy courts to preside over non-core proceedings and to submit *proposed* findings of fact and conclusions of law in reference to these proceedings to the district court, which must review these findings and conclusions de novo. 28 U.S.C. § 157(c)(1).

The parties dispute whether the action filed is a core or a non-core proceed-

ing under the bankruptcy code. Core proceedings are those traditionally within the realm of the bankruptcy court's equitable authority. The Bankruptcy Code, at 28 U.S.C. § 157(b)(2), contains a *non-exclusive* list of matters considered core. These include matters concerning the administration of the estate, allowance of claims against the estate, orders to turn over property of the estate, as well as proceedings to determine preferences and to avoid fraudulent conveyances. *Id.* Because the list is not all-inclusive, a court may also determine that other matters are core to the bankruptcy proceedings based on the historic role of the bankruptcy court.

NEI contends that its action against Koger is a core proceeding as, in its view, the action seeks the turnover of property of the debtor and because the alleged breach of lease occurred post-petition. Koger disagrees.

### A. Is the Action a Turnover Proceeding?

NEI first urges the Court to find that this action is core, as a turnover proceeding that falls within the ambit of 11 U.S.C. § 542(b). Section 542, which defines the scope of turnover proceedings, states in relevant part: "[A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset ... against the debtor." *Id.* § 542(b). NEI claims that the payment that it seeks falls within the ambit of Section 542(b) because the underlying debt alleged is mature, payable on demand and owed the estate.

■ Section 542(b) creates an action for turnover of matured debts owed to a bankrupt estate. These may be, for example, debts owed for accounts receivable, for judgments already obtained or for monies previously held in trust or in escrow. See *In re Willington Convalescent Home, Inc.*, 850 F.2d 50, 52 n. 2 (2nd Cir.1988) (action to recover judgment for services sold and delivered on account is within scope of Section 542(b)); *Nuckols and As-*

*socs. v. Bouchard Transp. Co.*, 109 B.R. 294, 295 (Bankr.S.D.Ohio 1989) (claim for ordinary, overdue business account—specific in its terms and date due—is turnover action even if defendant may assert valid defenses to the debt); *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 172 (Bankr.E.D.N.Y.1986) (action may be considered a turnover proceeding within Section 542 only where it seeks "the collection rather than creation of, recognition or liquidation of a matured debt"). In contrast, actions for damages based on state law claims are not within the scope of the statute. See *Interconnect Telephone Servs. v. Farren*, 59 B.R. 397, 400–01 (S.D.N.Y.1986) (state-law based action is not for turnover simply because it seeks recovery by the estate). As NEI emphasizes, a debt may be both mature for purposes of this provision and nonetheless disputed by the defendant. See *In re Willington Convalescent Home, Inc.*, 850 F.2d 50, 52 n. 2 (2nd Cir. 1988). In other words, for an action to be a turnover proceeding, it is not relevant that the defendant disputes the existence of the debt by, perhaps, denying the complaint's allegations, as long as those allegations state the existence of a mature debt.

■ The Complaint in this action, in contrast to NEI's argument, reveals that the "debt" alleged is not a mature debt within the meaning of Section 542(b). Although the Complaint could be characterized as alleging an action for wrongful possession of the proceeds of NEI's certificate of deposit that Crestar Bank held, a more accurate reading of the Complaint is that the action alleges a breach of lease. First, the Complaint quite plainly states that the theory supporting judicial intervention is that Koger has willfully breached the lease. For example, NEI demands damages arising from that breach of lease in the amount of the certificate of deposit (plus interest), as well as punitive damages.

Second, the allegations clearly present a claim based on substantive state contract law. NEI alleges that Koger wrongfully presented the letter of credit for payment. Koger's right to present the letter arises from the terms of the lease agreement,

which certainly endows Koger with the right to present the letter under certain circumstances. Whether Koger acted within its contractual rights thus depends on construction of the lease agreement and the extent of Koger's actions. In addition, it is not Koger that actually held NEI's property—the certificate of deposit. At all relevant times, Crestar Bank held that certificate or its proceeds. That Koger did not possess the certificate underscores the fact that this is an action for damages at law and not one to regain possession of property rightfully NEI's.

Third, and related to the prior point, with the action NEI seeks to create a debt. The action does not seek to enforce payment of an antecedent debt allegedly due NEI and properly characterized as property sought for turnover, as in *Nuckols*, 109 B.R. at 295. For these reasons, the Court concludes that this action is not an equitable action for turnover under Section 542(b) and is not a core proceeding pursuant to that section.

### B. Is the Action Core as within the Statute's Catch–All?

Section 157(b)(2) of title 28, contains a "catch-all" provision rendering as core matters "concerning the administration of the estate." NEI argues that this action falls within this provision because it involves an alleged debt that arose after NEI filed its petition and therefore affects the administration of the estate. The law is neither as settled nor nearly as translucent as NEI suggests.

Few courts dispute that post-petition claims arising from contracts entered post-petition are core matters to be adjudicated by the bankruptcy court. See *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir.1987) (action to recover post-petition account is core as it is a matter concerning administration of the estate). These courts have reasoned that the non-debtor contracting party is essentially contracting with the estate under the supervision of the bankruptcy court. As such, the contract is intimately a part of the administration of the estate. In addition, the non-

debtor contracting party is on notice of the bankruptcy court's intimate role in the contract and therefore implicitly consents to its jurisdiction. See *id.*

Similarly, courts have found that the inverse also holds true: contractual claims that arise prior to the petition and, of course, from contracts entered prior to the petition are non-core matters. See *Beard v. Braunstein*, 914 F.2d 434, 444–45 (3rd Cir.1990). This is so because the non-debtor party contracted with an apparently healthy company and in no way would be aware of the possibility of submitting itself to the jurisdiction of a bankruptcy court at the time of an alleged breach. In addition, the claim clearly pre-existed the estate and therefore did not arise in the bankruptcy case. See *id.* The proper characterization of a claim arising from a pre-petition contract for a post-petition breach, however, is not as readily apparent. This court is not aware of precedent directly on point.

NEI emphasizes that some courts have held that post-petition proceedings are core proceedings where the causes of action underlying the proceedings arose after the filing of the petition. For example, a district court has written: "The great majority of courts that have considered the issue have ruled that post-petition proceedings, where no cause of action existed on the date of filing of the petition, are core proceedings because they arose 'in a case.'" *In the Matter of O'Sullivan's Fuel Co., Inc.*, 88 B.R. 17, 19–20 (D.Conn.1988). Viewing these as core actions is rational in that the action first accrues to the estate and therefore appears to arise in the bankruptcy proceedings. Thus by implication, if a defendant breaches a contract post-petition—regardless of whether the contract was antecedent to the bankruptcy—the defendant is on notice that the damaged entity is under the supervision of the bankruptcy court and that the breach may interfere with the administration of the estate.

Yet, a contradictory line of authority has developed, noting that this former view allows bankruptcy courts to take on cases treading too close to the bounds of their constitutional authority. First, the Su-

preme Court several times has stated that Congress may not empower bankruptcy courts to issue binding orders in traditional contract actions brought by debtors against third-parties absent the consent of those parties. See *Thomas v. Union Carbide Agricultural Products*, 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985). Thus to render post-petition breach cases core, the cases must be distinguished from ordinary contract actions. Sometimes, the distinction is apparent. For example, as in *In re Arnold*, supra, where the breach is failure to pay a post-petition account receivable, it is implicit that the defendant failing to pay has dealt with the trustee of the estate.

■ Recognizing that not all post-petition breach cases involve substantial prior and direct dealings with the estate, some courts have applied the Supreme Court admonition to conclude that post-petition damages arising from pre-petition contracts do not give rise to core bankruptcy matters if they essentially present state-based legal claims. See *In re Castlerock Properties, Inc.*, 781 F.2d 159 (9th Cir.1986). In *Castlerock*, the Ninth Circuit observed that "a court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional concerns." *Id.* at 162. The court thus held that state-law contract claims that do not fall within the specific categories of core proceedings listed in 28 U.S.C. § 157(b)(2)(B–N) are non-core, even if they arguably fall within the bounds of the catch-all provisions of Section 157. *Id.* at 162. See also *Beard v. Braunstein*, 914 F.2d 434, 444–45 (3rd Cir.1990) (finding that claim for both pre– and post– petition past rents was non-core and emphasizing that contract at issue was pre-petition).

■ This Court finds this latter approach the more judicious manner of viewing these claims. The fortuitous occurrence of an alleged breach of contract post-petition—standing alone—should not render the estate's action to collect damages for that breach a core proceeding. Where, as here, it is clear that the contract underlying the claim is a pre-petition contract that contemplated neither dealing with a

bankrupt estate nor consenting to the jurisdiction of the bankruptcy court, some affirmative interaction between the non-debtor contracting party and the estate must exist for the matter to be considered a core action, subject to the full panoply of the bankruptcy court's power. Notably, each case cited by NEI as authority for its assertion that the action is core did in fact involve a post-petition debt that arose more clearly in connection with administration of the estate than the debt at issue here. See, e.g., *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir.1987) (claim arose in connection with sale of estate property); *In the Matter of O'Sullivan's Fuel Co., Inc.*, 88 B.R. 17, 19–20 (D.Conn.1988) (same).

■ Absent substantial post-petition contacts, an alleged breach of contract action treads too closely beside the bounds of the bankruptcy court's constitutional authority to render it a core proceeding. In such instances, the action is a "traditional state-law based contract action" without a substantial connection to the bankruptcy. Viewing such actions as core would create too grave a chance that the bankruptcy court would adjudicate rights at law that, under the Constitution, must be adjudicated by Article III courts. These actions thus are no more than related to the bankruptcy proceedings and should be considered, as this action shall be considered, non-core matters. See *In re Castlerock*, 781 F.2d at 162.

## II. The Right to a Jury Trial in Bankruptcy Proceedings

Koger argues that it has a Seventh Amendment right to a jury trial. The Supreme Court has recently discussed the scope of the constitutional right to a jury trial in proceedings related to a bankruptcy. In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court held that the Seventh Amendment provides a defendant in bankruptcy court the right to a jury trial where bankrupt plaintiffs file actions at law against third-parties who are not involved in the bankruptcy proceedings. In reaching the conclusion that an action for

fraudulent conveyance was such an action at law, the Supreme Court reasoned that fraudulent conveyance actions "are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res". See *Granfinanciera*, 109 S.Ct. at 2798. The Court also focused on the nature of the remedy sought by the plaintiff/debtor. See *id.* at 2793 (right to jury trial preserved because action is for "money payments of ascertained and definite amounts"). See also *Beard v. Braunstein*, 914 F.2d 434, 438 (3rd Cir.1990) ("The second, 'more important' part of the inquiry directed by *Granfinanciera*, is the nature of the remedy.").

■ Koger argues that because the Complaint in this case is based on an alleged breach of lease and requests only money damages, the Complaint is an action at law and gives rise to the right to a jury trial pursuant to *Granfinanciera*. Koger emphasizes that the action alleges a garden-variety contract action—a breach of the lease—based on state law and that it therefore falls within the rule endorsed in *Granfinanciera*. The Court agrees. Like the suit for fraudulent conveyance, this suit for breach of lease more nearly resembles a state contract action than a creditors' claim to a share of the bankrupt estate. Furthermore, the remedy sought is simply monetary damages. Consequently, the Court concludes that Defendant Koger maintains a Seventh Amendment right to a jury trial pursuant to the dictates of *Granfinanciera*.

NEI poses two arguments to the contrary. First, NEI argues that the suit is an equitable action for turnover of assets of the estate. As previously discussed above,

however, this action is not for turnover but rather is in essence a breach of lease action. Second, NEI correctly asserts that *Granfinanciera* is limited to instances where a defendant has not submitted a claim against the bankrupt estate. The *Granfinanciera* Court specifically stated that "the question presented is whether a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee...." *Id.* 109 S.Ct. at 2787. Implicitly, the Court thus preserved the antecedent rule that filing a claim in the bankruptcy amounts to submission to the equitable jurisdiction of the bankruptcy court on all claims related to the bankruptcy. See *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). See also *Granfinanciera*, 109 S.Ct. at 2798–99 (discussing and citing *Katchen*).

■ NEI argues that "to the extent that the Defendant has filed or will file a proof of claim in this case, its demand for a jury trial should not be granted." NEI does not contend, however, that Koger has yet filed such a proof of claim. Because the Court is constrained to rule on the record as it stands, the Court must reject NEI's argument as a basis for denying the request for a jury. The Court, however, expresses no position regarding a reassessment of Koger's right to a jury trial should Koger file a claim in the bankruptcy. That issue simply is not before the Court today.[1]

For these reasons, the Court concludes that at this time Koger's demand for a jury should and will stand.

### III. *Where Should this Action Proceed?*

Koger argues that because it has the right to a jury trial and because this action, as the Court has concluded, is non-core, the bankruptcy court lacks jurisdiction to con-

---

1. The Court recognizes the danger of ruling that regardless of Koger's action in the future, it will retain the right to a jury trial in this case. Had the Court chosen this course—which it has not—the Court would encourage similarly situated parties to wait until the last moment both to file adversary proceedings and to file claims on the bankruptcy estate: one hoping to gain the right to a jury if it is sued, and the other hoping that the potential defendant first files a claim on the estate. The Court will encourage no such result and, therefore, states that this Memorandum and the related Order express no position on Koger's right to a jury trial should it file a claim.

duct the trial.[2] The Circuit Courts of Appeal that have discussed a bankruptcy court's authority to oversee a jury trial of a non-core matter have agreed with Koger's position. See *In re Cinematronics, Inc.,* 916 F.2d 1444, 1451 (9th Cir.1990); *Beard v. Braunstein,* 914 F.2d 434, 445 (3rd Cir. 1990); *In re Ben Cooper, Inc.,* 896 F.2d 1394, 1403 (2d Cir.1990).

 In *Cinematronics,* for example, the Ninth Circuit reasoned that the scope of the bankruptcy court's right to preside over non-consensual, non-core issues did not allow it to hold jury trials on such matters. The court explained that deciding otherwise would place at odds a statutorily and a constitutionally compelled rule. First, 28 U.S.C. § 157(c)(1) requires district courts to review de novo findings of fact and conclusions of law of non-core issues decided by the bankruptcy court. However, the Seventh Amendment mandates that reviewing courts accord deference to the reexamination of jury findings by a trial court. See *Id.* (citing *Slocum v. New York Life Ins. Co.,* 228 U.S. 364, 379–80, 33 S.Ct. 523, 529–30, 57 L.Ed. 879 (1913)). This, of course, would include the re-examination of jury verdicts when the bankruptcy court presides over such trials. The Ninth Circuit thus concluded, as have the other courts cited above, that bankruptcy courts may not conduct jury trials on non-core issues absent the consent of the parties. The Court finds this reasoning compelling and thus, in the absence of Fourth Circuit precedent on point, also endorses that rule. As a result, because the Court has earlier concluded that this suit is non-core, the Court also concludes that withdrawal of the reference to bankruptcy court is the appropriate means of according Koger its right to a jury trial. See 28 U.S.C. § 157(d) (allowing withdrawal of reference to bankruptcy court "for cause shown").

## CONCLUSION

For the foregoing reasons, the Court concludes that Koger's Motion for Withdrawal of the Reference to Bankruptcy Court should and will be granted.

---

2. Because the Court has determined that the action is non-core, it need not address Koger's argument that the bankruptcy court lacks jurisdiction to conduct a jury trial even on a matter that is core.