Randy RALLS, et al., Appellants,

v.

DOCKTOR PET CENTERS,
INC., Appellee.

Civ. A. No. 92–12371–JLT.

United States District Court,
D. Massachusetts.

Jan. 26, 1995.

Bruce G. McNeill, Tarlow, Breed, Hart, Murphy & Rodgers, Boston, MA, Aaron Keiter, Keiter & Associates, P.C., Michael L. Holland, Holland & McHale, Houston, TX, for appellants.

Paul P. Daley, Erik P. Kimball, Hale & Dorr, Boston, MA, for appellee.

*MEMORANDUM*

TAURO, Chief Judge.

This case comes to the district court on appeal from a final judgment and order of the bankruptcy court. Below, Debtor/Appellee moved to reject certain franchise agreements and for money damages and equitable relief. The bankruptcy judge granted Appellee's Motion to Reject Certain Franchise Agreements. After a hearing, the bankruptcy judge awarded money damages and equitable relief.

I.

*Background*

Appellee, Docktor Pet Centers, Inc. ("Docktor"), was a national franchisor of retail pet stores with over 200 stores and 184 franchise agreements. Appellants, Randy Ralls, Kim Ralls, Traveling Circus, Inc.,[1] and David Yaksic ("Appellants") were franchisees of Docktor. Traveling Circus had one store. Yaksic had two stores. Other than their involvement in this case, the two parties are not connected.

On September 24, 1991, Docktor filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "Code"). The bankruptcy court refused Docktor's request for post-petition borrowing or use of cash collateral, and subsequently Docktor was forced to sell its assets. On December 10, 1991, Docktor sold all of its assets to a newly formed corporation, which was given the option, pursuant to 11 U.S.C. § 365, to assume any of Docktor's executory contracts and unexpired leases. The purchaser declined to assume 75 of the franchise agreements, including those at issue here.

On December 31, 1991, Docktor filed a motion to reject the 75 remaining franchise agreements pursuant to 11 U.S.C. § 365. In addition, Docktor asked the bankruptcy court to issue an injunction ordering the Appellants to "de-identify" their stores according to the termination provisions in the franchise agreement. Docktor also asked for money damages. Specifically, Docktor claimed that the 75 franchisees, including the Traveling Circus and Yaksic, had a history of non-payment of royalties and accounts receivable, both before and after the filing of the petition, and failed to meet Docktor's requirements for store cleanliness, humane treatment of animals and other franchise guidelines.

Below, Appellants objected to various aspects of the rejection proceedings. They did not object to the bankruptcy court ruling on the rejection of the franchise agreement. Instead, they argued that Docktor had sold its rights in the relevant contracts and thus did not have standing to request the injunctive relief.[2] Appellants also attacked the court's subject matter jurisdiction and its power to enter a final judgment on allegedly past due accounts receivable and royalties. Finally, Appellants argued that they were entitled to a full adversarial proceeding, including trial by jury.

The bankruptcy court held a hearing on January 30, 1992 and these demands were rejected. On February 6, 1992, the court issued its Memorandum Regarding Rejection of Certain Franchise Agreements. The bankruptcy court found that the termination provisions of the franchise agreements, including those calling for the de-identification of stores, remained binding on the Appellants. Further, it held that Docktor retained sufficient interest in the franchise agreements to support the court's jurisdiction.

The bankruptcy court then proceeded to hold a "contested matter" hearing on the issue of damages. Bank.R. 9014. The hearing lasted three days and parties were allowed all the benefits of discovery provided by Article VII of the Federal Rules of Bankruptcy Procedure which governs adversarial proceedings. Although they had the option, Appellants did not file any discovery motions, request depositions or propound interrogatories.

On July 22, 1992, the bankruptcy court issued its Decision on Rejection of Certain

---

**1.** Traveling Circus, Inc. was owned and operated by Randy and Kim Ralls. Collectively, they will be referred to as "Traveling Circus".

**2.** This claim is not before the court.

Franchise Agreements (the "Decision"). As a preliminary matter, it granted the motion to reject the agreements. The court also awarded monetary damages to Docktor in the amounts of $146,622.71 from Traveling Circus and $49,856.84 from Yaksic. These amounts were for past due accounts receivable, unpaid royalties, and remaining balances on notes. The bankruptcy judge also issued an injunction requiring Appellants to de-identify their stores. Finally, the bankruptcy court denied the Appellants' request to offset the cost of de-identifying their stores from the damage award.

Appellants allege the following five errors of law in the proceedings below: 1) that the bankruptcy court was without subject matter jurisdiction to issue the injunction or hear the claims for monetary damages; 2) that the bankruptcy court was without jurisdiction to issue a final order on the money damages; 3) that the bankruptcy court erred by not proceeding with an adversarial hearing; 4) that the bankruptcy court erred by not allowing a trial by jury; and 5) that the bankruptcy court erred by not allowing the Appellants to set-off the costs of de-identifying their stores from the award.

## II.

### Analysis

■ This court has direct appellate jurisdiction of final bankruptcy judgments. 28 U.S.C. § 158(a). The factual findings of a bankruptcy judge are reviewed under a "clearly erroneous" standard. *In re The Bible Speaks*, 869 F.2d 628, 630 (1st Cir.1989); *In re Roco Corp.*, 701 F.2d 978, 981 (1st Cir.1983). Conclusions of law are reviewed *de novo. Arnold Print Works, Inc. v. Apkin*, 61 B.R. 520, 521 (D.Mass.1986), *vacated on other grounds*, 815 F.2d 165 (1st Cir.1987); *Liebowitz v. Columbia Packing Co.*, 56 B.R. 222, 224 (D.Mass.1985), *aff'd*, 802 F.2d 439 (1st Cir.1986). The five contested issues herein are all issues of law.

### A. *Subject Matter Jurisdiction of the Bankruptcy Court.*

■ Bankruptcy courts are given a broad grant of subject matter jurisdiction under 28 U.S.C. § 157(a). The Code states that bankruptcy courts may hear "any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11...." *Id.* Generally, where the outcome of a proceeding "could conceivably have any affect on the estate being administered," the bankruptcy court has subject matter jurisdiction to hear the proceeding. *Videocart, Inc. v. Hambrecht & Quist, Inc.*, 165 B.R. 740, 743 (Bankr.D.Mass.1994); *Matter of Wood*, 825 F.2d 90, 93 (5th Cir.1987). The Motion to Reject Certain Franchise Agreements pursuant to § 365 is undeniably a matter over which the bankruptcy court has subject matter jurisdiction. The breach of contract claims asserted by Docktor may have an affect on the bankrupt's estate in that their outcome may increase the size of the estate. The bankruptcy court, therefore, has subject matter jurisdiction to hear those claims.

### B. *The Bankruptcy Court's Jurisdiction to Issue a Final Order and Judgment on Docktor's Contract Claims.*

■ As the Appellants point out, the power to *hear* a claim and the power to issue final orders are not necessarily co-extensive. *See In re Reed*, 94 B.R. 48 (Bankr.E.D.Pa.1988) (noting that a bankruptcy court has the power to hear a non-core proceeding, but not the power to issue a final order or judgement). Thus, there are two separate jurisdictional issues: the preliminary question of subject matter jurisdiction to simply hear the matters; and the second question of whether the bankruptcy court has the power to issue final judgment and orders. This court has already found that the bankruptcy court properly heard the matters involved. It now turns to the second question.

■ In *Northern Pipeline Const. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court found unconstitutional the Code's grant of jurisdiction, which allowed non-Article III bankruptcy judges to issue final judgement and orders for state or federal common law claims. Congress responded by amending the Code and creating a distinction between "core" and "non-core"

**424**

bankruptcy proceedings. 28 U.S.C. § 157(b), (c). Bankruptcy judges are empowered to enter final orders and judgments in core proceedings. 28 U.S.C. § 157(b). Bankruptcy judges may *hear* a non-core issue in connection with a bankruptcy proceeding. On these causes of action, however, their power is limited to submitting proposed findings of fact and conclusions of law to the district court for *de novo* review. 28 U.S.C. § 157(c)(1). Only a district court may enter a final judgment or order in a non-core proceeding. *Id.*[3]

Docktor contends its Motion to Reject and the relief requested therein are core proceedings over which the bankruptcy court properly issued final judgment and orders. In the alternative, they argue that the contract claims were related non-core issues, properly before the bankruptcy judge for proposed findings of fact and conclusions of law. Appellants do not contest the bankruptcy court's power to issue a final judgment on the Motion to Reject the Franchise Agreements. Appellants argue that the claims of breach of contract and warranty, and recovery of accounts receivable are garden variety state contract claims and thus are non-core proceedings. At most, therefore, the issues are related matters, and the bankruptcy court's jurisdiction is limited to offering proposed findings of fact and conclusions of law. The court assumes that the bankruptcy

judge found all the matters to be core proceedings.[4]

■■■ Generally, the determination between core and non-core can be made by reference to the source of authority for the challenged action.[5] Clearly, if the source is the Code itself, the action is a core proceeding. *See* 1 Daniel R. Cowans, Bankruptcy Law and Practice § 1.2 at 31 (1989); *In re MEC Steel Bldgs, Inc.*, 136 B.R. 606, 608 (Bankr.D.Puerto Rico 1992) ("Core proceedings are those involving matters arising under title 11 …, that is, they would not exist outside of bankruptcy."). As the Fifth Circuit succinctly put it, "a procedure is core … if it invokes a substantive right provided by title 11 or if it is a procedure that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987).

■■■ Non-core proceedings are state or federal claims that arise between parties within a bankruptcy proceeding. They are claims that do not stem from the Code itself, but "potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir.1991). "If an action would sur-

---

3. The code does allow the bankruptcy judge to issue a final judgment or opinion on non-core issues with consent of both parties. 28 U.S.C. § 157(c)(2). Appellants did not so consent.

4. In its Decision, the bankruptcy court listed as a preliminary matter the dispute over whether the contract claims were properly before the court as core matters. The discussion, however, does not specifically address the issue.

5. The Code itself does not define a core proceeding. Rather, § 157(b)(2) sets forth the following non-exhaustive list of actions which are to be considered "core":

    (A) matters concerning the administration of the estate;
    (B) allowance or disallowance of claims against the estate or exemptions from property of the estate....
    (C) counterclaims by the estate against persons filing claims against the estate;
    (D) orders in respect to obtaining credit;
    (E) orders to turn over property of the estate;

    (F) proceedings to determine, avoid, or recover preferences;
    (G) motions to terminate, annul, or modify the automatic stay;
    (H) proceedings to determine, avoid, or recover fraudulent conveyances;
    (I) determinations as to the dischargeability of particular debts;
    (J) objections to discharges;
    (K) determinations of the validity, extent, or priority of liens;
    (L) confirmations of plans;
    (M) orders approving the use or lease of property, including the use of cash collateral;
    (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

vive outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state or a district court, then it clearly involves a non-core matter." *In re MEC Steel Bldgs,* 136 B.R. at 609 (citing 1 Lawrence P. King et. al., Collier on Bankruptcy P 3.01(1)(c)(iv) at 3–27 (15th ed 1991)). Generally, if the claims could have been brought before the filing of the bankruptcy petition, the claims are non-core. *See Zweygardt v. Colorado Nat'l Bank of Denver,* 52 B.R. 229 (Bankr.D.Colo.1985).

▮▮▮▮ The fact that state law may affect the outcome of a proceeding does not, in and of itself, render the proceeding non-core. 28 U.S.C. § 157(b)(3). Further, the mere fact that a claim is brought ancillary to a proper bankruptcy claim does not render the former a core proceeding. Although the case law does not specifically speak to this distinction, the word "proceeding" must refer to the specific causes of action and grounds for relief sought by a party, and not to the entire action. Any broader meaning would fail to comply with the Constitutional concerns of *Marathon.*[6]

Docktor asserts breach of contract claims and claims to recover accounts receivable. It is difficult to characterize these as core matters. *See In re MEC Steel,* 136 B.R. at 609 ("Actions initiated in bankruptcy court to collect pre-petition account receivables [sic] are clearly non-core matters and should not be considered as matters affecting the administration of the estate or actions for turnover of property of the estate in order to categorize them as core."). Docktor's claims, however, include *post*-petition accounts receivable and damages. As such, Docktor argues that, under the First Circuit's deci-

sion in *In re Arnold Print Works, Inc.,* 815 F.2d 165 (1st Cir.1987) (Breyer, J.), the claims are properly before the bankruptcy court as a core matter.

*Arnold* is the First Circuit's leading authority on the definition of core proceedings. *Arnold* determined that certain claims for accounts receivable, though in essence state common law actions, were properly before the bankruptcy court for final judgment as core proceedings.

In *Arnold,* the First Circuit re-affirmed that the bankruptcy courts are without power to adjudicate a suit seeking pre-petition debts. *In re Arnold,* 815 F.2d at 165. On the other hand, the court held that a debtor-in-possession may bring suit in bankruptcy court to recover on debts that arose while in bankruptcy and as part of the debtor's efforts to liquidate its assets. *Id.* Specifically, the First Circuit held that such suits are core proceedings under the literal meaning of the catch-all provisions in the Code: § 157(b)(2)(A), "matters concerning the administration of the estate," because "it involves a claim that arose out of the administrative activities of a debtor-in-possession," *Id.* at 168; and § 157(b)(2)(O), "other proceedings affecting the liquidation of the estate", because "the claim arose out of the debtor's efforts to liquidate estate assets." *Id.* It continued, stating that "[m]oreover, the vast majority of courts that have considered the status of similar post-petition claims have held that they were core proceedings." *Id.*

Docktor asserts that because the breaches continued beyond the date of the petition and

---

**6.** Some confusion might arise out of the unusual use of the word "proceeding". In the bankruptcy context, the "proceeding" may be thought of as the entire bankruptcy, from the initial filing of the petition to the final resolution. The word "proceeding" may also have a narrower application and refer to a single suit filed during the bankruptcy period, such as a suit to set aside a preference or to approve reorganization plan.

The use of the word proceeding in the core/non-core discussion must be narrower still. The "proceeding" must refer to each cause of action or right of recovery pled. This is the only interpretation which would adequately heed the constitutional concerns in *Marathon.* If the word

"proceeding" referred to the entire action before the court, a party could bring a state law claim within the purview of the bankruptcy judge merely by adding another count to, say, a motion to set aside a preference. This cannot be the case. Each claim must, on its own, satisfy the requirements of § 157(b). A district court must scrutinize each count and each asserted right for relief to determine which ones were properly before the bankruptcy judge for final resolution and which ones must receive *de novo* review. *Cf. In re Associated Growers of Colorado,* 97 B.R. 39, 40 (Bankr.D.Colo.1989) (affirming bankruptcy court's jurisdiction over two counts and denying jurisdiction for a third).

because some accounts receivable arose post-petition, the entire matter becomes a core proceeding under the reasoning set forth in *Arnold.* These facts, however, exceed the clear bounds of *Arnold.*[7] In *Arnold* and the cases on which the First Circuit relied, all aspects of the causes of action arose post-petition. For instance, *L.A. Clarke and Sons, Inc.,* 51 B.R. 31 (Bankr.D.D.C.1985), cited in *In re Arnold,* involved a situation in which "all the operative events giving rise to the claim and counterclaims *occurred during the period after the debtor's Chapter 11 petition was filed,* while the debtor was a debtor-in-possession operating under the aegis of this court's protection and authority." *Id.* at 33 (emphasis added). Thus, the cause of action arose during and concerned the administration of the estate.

Neither party cites any cases supporting or opposing the contention that a pre-petition breach continuing beyond the filing date renders the entire matter a core proceeding. The court has found *Beard v. Braunstein,* 914 F.2d 434 (3d Cir.1990), which involved a situation almost directly on point. In *Beard,* a Chapter 7 trustee sued to collect pre and post-petition rents due on a pre-petition lease. *Id.* at 434. The Third Circuit reviewed the Court's holding in *Marathon* and its subsequent decision in *Thomas v. Union Carbide Agri. Prods. Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), which held that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgement, and issue binding orders in a traditional contract action arising under state law, without the consent of the litigants, and subject only to ordinary appellate review." *Thomas,* 473 U.S. at 584, 105 S.Ct. at 3334. It then discussed the First Circuit's

opinion in *Arnold,* and its reliance on the pre/post petition distinction. The Third Circuit noted, however, that nothing in *Marathon* indicated this distinction to be relevant to the Court's holding in that case. *Beard,* 914 F.2d at 444–45.

The Third Circuit, however, did not disagree with *Arnold.* Instead, it distinguished the facts in *Beard* from those in *Arnold.* The Third Circuit noted that the leases at issue in *Beard,* like the franchise agreements here, are "only tangentially related to the bankruptcy." *Id.* at 445. The contract in *Arnold,* on the other hand, grew out of efforts to manage to bankrupt estate. Further, as in the instant case, the *Beard* defendants had contracted with an "apparently healthy" company. *Id.* In *Arnold,* as noted above, the contracts were entered into with a debtor-in-possession.[8]

The First Circuit itself commented on the relevance of such factors by noting that

> [a] party who contracts with an apparently healthy company—a company that has not filed a petition in bankruptcy—may find it unpleasantly surprising to have to defend its pre-petition contract in a bankruptcy court, without a jury or Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court. Parties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise. *Arnold,* 815 F.2d at 170.

The issue before the court also raises the same constitutional questions as in *Marathon.* The Ninth Circuit, discussing a similar

---

7. A quick comparison of the cause of action in *Arnold* and the present one reveals important distinctions. In *Arnold,* the debtor was in Chapter 11 before the causes of action accrued. In an effort to manage its affairs as a debtor-in-possession, it attempted to liquidate assets and entered into a contract to sell printing rollers. *Id.* at 167. The buyer refused to pay for the rollers. Thus, the contract itself arose post-petition and as part of the debtor-in-possession's efforts to administer the estate. Further, the buyer knew that it was contracting with an entity under the supervision of the bankruptcy courts.

In the instant case, the franchise agreements are wholly unrelated to the bankruptcy. They were entered into well before Docktor filed its petition and none of the complained of events, i.e., the breach of warranty and non-payment of accounts receivable, involve Docktor's attempts to administer its estate. Further, in light of the fact that the bankruptcy hearings began only two months after the filing of the petition, it is doubtful that much, if any, of the outstanding debts owed arose post-petition.

8. *See* discussion *supra,* note 7.

issue, observed that "a court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems." *In re Castlerock Properties, Inc.*, 781 F.2d 159, 162 (9th Cir.1986). It held, therefore, that "state law contract claims which do not fall within the specific categories of core proceedings listed in 28 U.S.C. §§ 157(b)(1)(B)–(N) are non-core, even if they arguably fall within the two 'catch-all' provisions of section 157(b)(2)(A) and (O)." *Beard*, 914 F.2d 434 (explaining *In re Castlerock*, 781 F.2d at 162). This concern has previously been echoed in this district on a related matter. In *Kwiat v. Doucett*, 81 B.R. 184, 192 (D.Mass. 1987), Judge Young wrote, "[t]he Court is wary of too expansive a reading of § 157(b)(2)(O), which is really nothing more than a catch-all provision". *See also In re Statewide Pools*, 126 B.R. 877, 881 (Bankr. S.D.Oh.1991) (too broad a reading of § 157's catch-all provisions would elevate the claim in *Marathon* to a core proceeding). Such caution does not run afoul of *Arnold*. *See Kwiat*, 81 B.R. at 192.

This court chooses to follow the Third Circuit's reasoning in *Beard*. "The fortuitous occurrence of an alleged breach of contract post-petition—standing alone—should not render the estate's action to collect damages for that breach a core proceeding." *National Enterprises, Inc. v. Koger Partnership, Ltd.*, 128 B.R. 956, 960 (E.D.Va.1991). This method will not create difficult jurisdictional decisions for bankruptcy courts. "Where, as here, it is clear that the contract underlying the claim is a pre-petition contract that contemplated neither dealing with a bankrupt estate nor consenting to the jurisdiction of the bankruptcy court, some affirmative interaction between the non-debtor contracting party and the estate must exist for the matter to be considered a core action, subject to the full panoply of the bankruptcy court's power." *Id.*

Moreover, this holding is not in conflict with the First Circuit's opinion in *Arnold*. The issues in this case are distinguishable from that in *Arnold*. *Arnold* involved claims that were "both historically and functionally distinguishable from those at issue in *Marathon*." *Arnold*, 815 F.2d at 169. The substantive rights sought to be enforced here are created not by title 11 but by contract law within the purview of state and federal common law. Further, the franchise agreements at issue here were not made "with officers of the court," *Id.*, and therefore, the Appellants should not expect that their disputes must be resolved by a bankruptcy court. *Id.*

This court, therefore, adopts the premise "that this action, involving pre-petition contracts, allegedly breached both before and after the filing of the petition, is entirely a non-core matter related to a case arising under title 11."[9] *Beard*, 914 F.2d at 445; *see also National Enterprises, Inc.*, 128 B.R. 956, 961 ("This court finds this latter approach the more judicious manner of viewing these claims.").

Pursuant to this finding, the award of damages is vacated and the issue is remanded to the bankruptcy court for further proceedings not inconsistent with this opinion. Docktor's claims for past due royalties, accounts receivable and other damages are related non-core matters. They may be heard by the bankruptcy court pursuant to 28 U.S.C. § 157(b). The bankruptcy judge shall set forth its find-

---

9. The court is aware of the decision in *In re Associated Growers of Colorado*, 97 B.R. 39 (Bankr.D.Colo.1989). In *In re Associated Growers*, the debtor-in-possession sued to recover pre and post-petition accounts receivable. In the six months prior to the filing of the petition, the debtor sold to the defendant $37,196.44 worth of goods on open account. *In re Associated Growers*, 97 B.R. at 40. In the month after the petition, the debtor sold $21,464.91 worth of goods to the defendant. *Id.* The bankruptcy court simply severed the case at the petition date, dismissed the count for the pre-petition accounts receivable and allowed the count for the post-

petition accounts receivable to continue as a core proceeding. *Id.* at 41.

Although this method is reasonable, the court chooses not to apply it. The severance method, whereby the cause of action would be severed at the petition date, would result with the bankruptcy court issuing final orders and judgement for those causes of action arising after the petition, yet be empowered only to issue proposed findings of fact and conclusions of law for the portion of the breach arising pre-petition. This would be an awkward result, considering that the issues of fact and law would most likely be the same for both claims.

ings of fact and conclusions of law for *de novo* review.

### C. Did the Bankruptcy Court Err by Not Conducting an Adversarial Hearing?

▓ The Bankruptcy Rules provide two avenues for resolving disputes: adversarial hearings and contested matter hearings. Bankr.R. 7001, 9014. The Rules require an adversarial hearing for certain specified proceedings conducted in a bankruptcy court, including recovery of money or property, Bankr.R. 7001(1), and obtaining injunctive or other equitable relief. Bankr.R. 7001(7). Part VII of the Bankruptcy Rules, which essentially mirrors the Federal Rules of Civil Procedure, sets forth the procedural rules to be applied during adversarial hearings. Bankr.R. 7001.

▓ Matters not listed in Rule 7001 proceed via a "contested matter" hearing. Bankr.R. 9014. Rule 9014 establishes the procedural rules to be used in contested matter hearing and incorporates many of the substantive procedural provisions from Part VII. Bankr.R. 9014 ("The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, and, unless the court otherwise directs, the following rules shall apply: 7021, 7025, 7026, 7028–37, 7041, 7052, 7054–56, 7062, 7064, 7069, and 7071."). The only significant substantive difference noted by the Appellants is that an adversarial hearing is commenced by a complaint and a contested matter is commenced by motion. (App.Mem. at 22.)

The court agrees with Appellants that the request for monetary damages and injunctive relief are covered by Rule 7001 and should have proceeded as an adversarial hearing. The bankruptcy court's decision to proceed as a contested matter, however, was not prej-

udicial to Appellants, and therefore was harmless error. *See* Bankr.R. 9005, Harmless Error (incorporating Fed.R.Civ.P. 61).[10] *See In re Stacy,* 99 B.R. 142, 147 (D.Mass. 1989) (Freedman, C.J.) (holding that under certain circumstances the failure to hold an adversarial hearing is a non-prejudicial procedural defect constituting harmless error).[11]

Appellants do not argue that they lacked proper notice or time to prepare. Neither do they contend that the hearings held were lacking in any material respect. In fact, Appellants admit that "the Bankruptcy Court ... proceeded to take evidence and conduct a hearing *(in effect a trial)* to determine the amount of monetary damages." (App.Mem. at 7 (emphasis added).) Appellants were afforded the opportunity to call and cross-examine witnesses and present evidence. Further, they were given the opportunity for full discovery, as provided by Part VII, but chose not to conduct any depositions or propound any interrogatories.

Appellants submit that the "chief" difference between the two processes is that "adversarial proceedings are not considered expedited matters, and wind their way through the usual litigation process." (App.Mem. at 22.) This court will not consider the argument that because a matter is resolved quickly, efficiently, and most likely, cost effectively, it is prejudicial to one of the parties. Appellants also contend that in adversary proceedings "[t]he issues are framed in an orderly manner by virtue of a formal complaint...." *Id.* They do not, however, allege that they were in any way prejudiced by the informal pleading process.

▓ Finally, Appellants contend that they were unable, in the contested matter hearing, to present evidence regarding the set-off. This too is irrelevant to the question

---

**10.** Rule 61 reads in relevant part, "[n]o error in either the admission or exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court ... is ground for ... vacating, modifying or otherwise disturbing a judgment or order unless refusal to take such action appears to the court inconsistent with substantial justice." Fed.R.Civ.P. 61.

**11.** The court in *In re Stacy* determined that the appellant's complained of defect, the lack of full

discovery, would not have lead to the development of any useful evidence, and therefore, was not prejudicial. *In re Stacy,* 99 B.R. at 147. Here too, Appellants have not alleged any prejudicial defects in the conduct of the hearing. Appellants attempt to distinguish *In re Stacy* by arguing that in *Stacy,* unlike this case, there were no true disputed facts. This distinction is irrelevant. The fact remains that the decision to proceed as a contested matter did not affect Appellants' ability to discover or present evidence.

of whether Appellants were prejudiced by the bankruptcy judge's decision to proceed via a contested matter hearing. The bankruptcy judge's discretion over the admission of such evidence is same in an adversarial hearing as in a contested matter hearing.[12]

This court finds, therefore, that the bankruptcy judge's decision to conduct the proceedings as a contested matter was harmless error.

### D. Did the Bankruptcy Court Err by Denying Appellants' Late Request for a Jury Trial?

▆ Bankruptcy Rule 9015 states that "[i]ssues triable of right by jury shall, if timely demanded, be by jury...." Bankr.R. 9015. The jury demand must be made "in writing not later than 10 days after service of the last pleading directed to such issue." Bankr.R. 9015(b)(1). Both parties cite to Federal Rules of Civil Procedure 38 and 39, and note that Rule 39(b) provides that "the court in its discretion *upon motion* may order a trial by jury of any or all issues." Fed.R.Civ.P. 39(b) (emphasis added).

As a preliminary matter, the court notes that Rules 38 and 39 are not incorporated into either Part VII of the Bankruptcy Rules, applicable to adversary hearings, or Bankruptcy Rule 9014, applicable to contested matters. Bankruptcy Rule 9015(d) states that "[n]otwithstanding the failure of a party to demand a jury when such a demand might have been made of right, the court *on its own initiative* may order a trial by jury of any or all issues." Bankr.R. 9015(d) (emphasis added). Technically, therefore, it appears that if a party fails to make a proper jury demand in a bankruptcy matter, it does not have an opportunity to move for a jury trial as provided by the Federal Rules of Civil Procedure. The Bankruptcy Rules explicitly

leave the issue to the bankruptcy judge's "own initiative." *Id.*

Regardless, this court finds the bankruptcy judge's denial of Appellants' motion was not an abuse of discretion. Appellants admit that their jury demand was filed late. App. Mem. at 31. In fact, their demand was almost a full month late and came just before the start of the first hearing. Appellants offer no reason or excuse for the delay. Accordingly, the bankruptcy judge did not abuse his discretion in denying the request for a jury trial.

### E. Did the Bankruptcy Judge Err by Denying Appellants to Set–Off From the Damage Award the Costs of De–Identifying their Stores?

▆ Appellants' final objection concerns the bankruptcy court's denial of their request to set-off the costs of de-identifying their stores from the damage award. Under the terms of the Franchise Agreement, franchisee must, upon termination of the agreement, remove all signs, structures, etc. relating to Docktor. Further, they must remove all price tags, merchandise and advertising imprinted with the franchisor's name or trademarks. Appellants' request attempted to pass these costs on to the franchisor.

Simply put, the terms of franchise agreements do not indicate that the franchisor is in any way liable for the costs incurred by the franchisees. The bankruptcy judge found that language of the agreement contemplated that the franchisees are solely responsible for de-identification of their stores. Further, the agreements allow for termination by the franchisor at any time and for any reason. The court finds, therefore, that the bankruptcy judge properly denied Appellants' request for a set-off or recoupment of the cost of de-identifying their stores.

---

**12.** Finally, Appellants alluded to the abstention provisions of the Bankruptcy Code, 28 U.S.C. § 157(d), and suggested that abstention was appropriate in this case. *In re Tastee Donuts, Inc.,* 137 B.R. 204 (E.D.La.1992), cited by Appellants, clearly explains that abstention in not necessary here:

"Mandatory withdrawal is only appropriate when the proceeding requires significant inter-

pretation, as opposed to simple application of federal laws apart from bankruptcy statutes. This is essentially a state law breach of contract claim, and does not implicate consideration or interpretations of federal law." *Id.* at 205 (citations omitted).

Abstention on such an issue is at the discretion of the trial judge. *Id.*

## III.

### Conclusion

For the foregoing reasons, the decision of the bankruptcy judge is vacated and the matter is remanded to the bankruptcy court for further action not inconsistent with this opinion.