BREYER, Circuit Judge.
 

 Assume that B, a bankrupt company in the midst of federal bankruptcy proceedings, brings an ordinary state law contract claim against D, a private party, seeking money that D allegedly owed B before B went bankrupt. In
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held that federal bankruptcy judges lacked the constitutional power to adjudicate this controversy because they “do not enjoy the protections constitutionally afforded to Art. Ill judges.”
 
 Id.
 
 at 60, 102 S.Ct. at 2866. This appeal raises a related question under Article III. It asks whether a federal bankruptcy court that is statutorily authorized to hear and determine “core” bankruptcy proceedings, 28 U.S.C. § 157(b) (1982 ed., Supp. Ill), may adjudicate a state law claim arising from a contract that 1) was made
 
 after
 
 B went bankrupt and 2) was made as part of B’s efforts to liquidate estate assets. In our view, the matter of
 
 *166
 
 timing and the relation to judicial administration of the bankrupt’s estate make a critical constitutional difference between
 
 Marathon
 
 and the present case.
 
 Marathon
 
 notwithstanding, the bankrupt company’s legal action to collect a “post-petition” debt, brought as part of efforts to liquidate the estate, is a “core” proceeding that the bankruptcy court has the constitutional power to decide.
 

 I
 

 Marathon.
 
 To understand the legal issue in this case, one must begin with
 
 Marathon,
 
 the case in which the Supreme Court held unconstitutional 28 U.S.C. § 1471 (1976 ed., Supp. IV), a key jurisdictional provision of the Bankruptcy Act of 1978. The specific issue in that case was whether the bankruptcy court possessed the constitutional power to adjudicate a bankrupt’s state law contract claim — a claim that arose before the filing of the bankruptcy petition. A plurality of four justices reasoned that bankruptcy courts are not Article III courts because their judges do not have life tenure or protection against salary diminution. It then reviewed the three “exception[s] from the general prescription of Art. Ill” — exceptions that, historically speaking, have been limited to congressional creation of “territorial courts,” “courts-martial,” and “legislative courts and administrative agencies” that “adjudicate cases involving ‘public rights.’ ”
 
 Marathon,
 
 458 U.S. at 64-67, 102 S.Ct. at 2867-69. “Public rights” were characterized as those that “arise ‘between the government and others,’ ” as contrasted with private rights, which involve “ ‘the liability of one individual to another under the law as defined.’ ”
 
 Id.
 
 at 69-70, 102 S.Ct. at 2870-71 (quoting
 
 Ex parte Bakelite Corp.,
 
 279 U.S. 438, 451, 49 S.Ct. 411, 413, 73 L.Ed. 789 (1929) and
 
 Crowell v. Benson,
 
 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932)). The plurality conceded that Congress might grant to non-Article III courts the power to find facts in cases involving
 
 certain
 
 private rights, namely congressionally created private rights.
 
 See id.
 
 at 80,102 S.Ct. at 2876 (“[W]hen Congress creates a substantive federal right, it possesses substantial discretion to prescribe the manner in which that right may be adjudicated — including the assignment to an adjunct of some functions historically performed by judges.”). But, the plurality said, the right contested in
 
 Marathon
 
 was neither a “public right” nor a “congressionally created right,” so Congress could not delegate the power to adjudicate that right to a bankruptcy court that lacked the attributes prescribed in Article III. Two justices agreed with the plurality’s result, but on the narrower ground that the issues in the lawsuit arose “entirely under state law,” and that no case had “gone so far” as to permit a non-Article III court to adjudicate a claim like Northern’s.
 
 Id.
 
 at 90-91, 102 S.Ct. at 2881-82, (Rehnquist, J., concurring in the judgment).
 

 The Supreme Court has since adopted a view of
 
 Marathon
 
 that resembles that of the concurring justices. In
 
 Thomas v. Union Carbide Agricultural Products Co.,
 
 473 U.S. 568, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985), the Court characterized
 
 Marathon
 
 as a case in which it “was unable to agree on the precise scope and nature of Article Ill’s limitations.” It added:
 

 The court’s holding in
 
 [Marathon
 
 ] establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review.
 

 Id.
 
 105 S.Ct. at 3334-35. This narrow view of the decision was reaffirmed last year.
 
 See Commodity Futures Trading Commission v. Schor,
 
 — U.S.-, 106 S.Ct. 3245, 3251, 92 L.Ed.2d 675 (1986).
 

 The Bankruptcy Amendments and Federal Judgeship Act of 1984.
 
 After the
 
 Marathon
 
 decision, Congress amended the Bankruptcy Act of 1978 in an effort to cure the constitutional defect in its jurisdictional provision. The new jurisdictional provisions distinguish between “core” bankruptcy proceedings and those that are merely “related to” title 11 cases.
 
 See
 
 Appendix. Upon referral from the district court, the
 
 *167
 
 bankruptcy judge has full statutory authority to “hear and determine ... all core proceedings_” 28 U.S.C. § 157(b)(1). Representative Kastenmeier, one of the new law’s co-sponsors, explained that core proceedings are “integral to the core bankruptcy function of restructuring debtor-creditor rights,” 130 Cong. Rec. E1109 (daily ed. March 20, 1984), and that they include “all necessary aspects of a bankruptcy case,”
 
 id.
 
 at E1108. The new law sets forth a nonexhaustive list of “core proceedings,” including such obvious matters as “allowance[s] or disallowance[s] of claims,” 28 U.S.C. § 157(b)(2)(B), as well as matters more relevant to this case, namely: “matters concerning the administration of the estate” and “other proceedings affecting the liquidation of the assets of the estate,” 28 U.S.C. § 157(b)(2)(A), (0).
 

 Non-core proceedings, those that the statute calls “related to” bankruptcy cases, concern aspects of the bankruptcy case that
 
 Marathon
 
 barred non-Article III judges from determining on their. own. The sponsors of the 1984 Amendments that later became § 157 referred to this category of proceedings as “Marathon-type suits,” by which they meant claims “concerned only with State law issues that did not arise in the core bankruptcy function of adjusting debtor-creditor rights.” 130 Cong.Rec. H1848 (daily ed. March 21, 1984) (statement of Representative Kindness). In non-core proceedings, unless the parties consent to the bankruptcy court’s jurisdiction, the bankruptcy judge has the power only to “submit proposed findings of fact and conclusions of law to the district court,” and the parties are entitled to de novo review of any matter to which they “timely and specifically” object. 28 U.S.C. § 157(c)(1). Moreover, the bankruptcy court may (and sometimes must) abstain from hearing non-core matters, leaving the parties to sue in state court.
 
 See
 
 28 U.S.C. § 1334(c) (1982 ed., Supp. III).
 

 In the view of § 157’s sponsors, the distinction between core and non-core proceedings cured the constitutional defect in § 1471. Bankruptcy judges would “decide all core bankruptcy proceedings, subject only to traditional appellate review,” 130 Cong.Rec. E1108 (daily ed. March 20, 1984) (prepared statement of Representative Kastenmeier), as
 
 Marathon
 
 permitted.
 
 See Marathon,
 
 458 U.S. at 71, 102 S.Ct. at 2871. Article III courts would retain ultimate control over “Marathon-type suits.” The new structure would make it possible to the extent constitutionally permissible to hear matters relating to a single bankruptcy in a single forum.
 
 See
 
 130 Cong.Rec. E1108 (daily ed. March 20, 1984) (prepared statement of Representative Kastenmeier).
 

 The Present Litigation.
 
 The appellant in this case, Arnold Print Works, Inc. (Arnold), filed a petition in bankruptcy in 1981. It continued to manage its property under the provisions of the Bankruptcy Act as a “debtor-in-possession.” 11 U.S.C. § 1107 (1982). As part of an effort to liquidate its assets, it sold printing rollers to George Apkin and Sons (Apkin), the appellee. Apkin, believing that Arnold had misrepresented the quality of the rollers, refused to pay about $9000 of the $20,000 purchase price. In April 1985, Arnold sued Apkin in the federal bankruptcy court for the $9000. Apkin told the court that Arnold was in the wrong forum because Arnold’s claim was basically a state law contract claim, which made the proceeding non-core. Apkin also pointed to the new Act’s abstention provisions, asking the court to abstain pursuant to 28 U.S.C. § 1334(c)(1), and thereby to force Arnold to sue in state court, where Apkin could insist on a jury trial.
 

 The bankruptcy court discussed legal reasons for considering the proceeding to be core, but held that district court precedent required that it find the proceeding non-core.
 
 See In re Arnold Print Works, Inc.,
 
 54 B.R. 562, 569 (Bankr.D.Mass.1985) (citing
 
 Mohawk Industries, Inc. v. Robinson Industries, Inc.,
 
 46 B.R. 464, 466 (D.Mass.1985)). It chose not to abstain. It decided instead to hold a bench trial and to submit proposed findings to the district court. Apkin appealed the jurisdictional decision to the district court. The district court agreed that the proceeding to resolve Arnold’s claim was non-core, but it also held that the bankruptcy court should have
 
 *168
 
 abstained and required Arnold to sue in state court.
 

 Arnold now appeals this district court decision to us.
 

 II
 

 Arnold asks us to determine whether the bankruptcy proceeding to consider its claim for payment of a post-petition debt is a core proceeding that the Constitution permits the bankruptcy court to adjudicate. We conclude that it is, and that neither justice nor comity with State courts requires that the bankruptcy court abstain from hearing the case. The bankruptcy court may therefore hear and decide it.
 

 Core Proceedings.
 
 Assuming for the moment that the Constitution permits the bankruptcy court to adjudicate the claim, we believe that the statute’s term “core” covers this proceeding. The action of a debtor-in-possession to collect a post-petition debt arising from the sale of the estate’s assets, unlike a suit to recover a pre-petition debt, falls within the literal wording of 28 U.S.C. § 157(b)(2)(A), “matters concerning the administration of the estate,” because it involves a claim that arose out of the administrative activities of a debtor-in-possession.
 
 See In re L.A. Clarke & Son, Inc.,
 
 51 B.R. 31, 33 (Bankr. D.D.C.1985). It falls within the literal wording of 28 U.S.C. 157(b)(2)(0), “other proceedings affecting the liquidation of the assets of the estate,” because the claim arose out of the debtor’s efforts to liquidate estate assets.
 
 Cf. In re Franklin Computer Corp.,
 
 50 B.R. 620, 625-26 (Bankr.E.D.Pa.1985) (noting that § 157(b)(2)(0) “supports a finding that an action on an account receivable is a core proceeding”). One can imagine arguments suggesting that it falls within other provisions as well.
 
 See, e.g.,
 
 28 U.S.C. § 157(b)(2)(E) (“orders to turn over property of the estate”).
 

 Moreover, the vast majority of courts that have considered the status of similar post-petition claims have held that they were core proceedings.
 
 See, e.g., In re Mansker,
 
 60 B.R. 803 (Bankr.D.Mass.1986) (holding an action for post-petition breach of an agreement to purchase property to be a core proceeding);
 
 In re L.A. Clarke, supra
 
 (holding an action to recover a post-petition account receivable to be core);
 
 In re Franklin Computer, supra
 
 (same);
 
 In re All American of Ashburn, Inc.,
 
 49 B.R. 926 (Bankr.N.D.Ga.1985) (same).
 
 But see In re Schear & Associates, Inc.,
 
 47 B.R. 544 (Bankr.S.D.Fla.1985). The leading treatise on bankruptcy law agrees that in these post-petition cases, the “better result is that the proceeding is core.” 1 King, Collier on Bankruptcy ¶ 3.01, at 3-41 (15th ed. 1986). The precedent in this circuit upon which the district court and bankruptcy court relied,
 
 Mohawk Industries,
 
 does not in fact present a direct holding to the contrary, for it involved a pre-petition, not a posi-petition debt; thus the
 
 Mohawk Industries
 
 claim did not arise out of the “administration of the estate.”
 

 Further, the legislative history of the new statute indicates that Congress intended that “core proceedings” would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings.
 
 See
 
 130 Cong. Rec. E1108-E1110 (daily ed. March 20, 1984) (statement of Representative Kasten-meier);
 
 id.
 
 at H1848, H1850 (daily ed. March 21, 1984) (statement of Representative Kindness). They used arguments strongly suggesting that they were pressing the notion to its constitutional bounds. They referred to the suits in the non-core category as “Marathon-type” cases,
 
 see, e.g., id.
 
 at E1108, E1109 (daily ed. March 20,1984) (prepared statement of Representative Kastenmeier);
 
 id.
 
 at H1848 (daily ed. March 21, 1984) (statement of Representative Kindness), which they understood to be proceedings of “a very limited kind,”
 
 id.
 
 at H1848 (daily ed. March 21,1984) (statement of Representative Kindness). Representative Kastenmeier said that “jurisdiction in core bankruptcy proceedings is broader than the summary jurisdiction under pre-1978 law,” 130 Cong.Rec. E1108 (daily ed. March 20, 1984), and summary jurisdiction covered post-petition claims.
 
 See infra
 
 pp.
 
 *169
 
 169t70. We recognize that the authors of the section also spoke of “core” proceedings as those “integral to the core bankruptcy function of
 
 restructuring debtor-creditor rights,”
 
 130 Cong.Rec. E1109, but the statutory list of core proceedings, and the discussion on the floor of Congress, make clear that this last italicized phrase was not meant to restrict core proceedings to competing claims directly against the estate. Rather, it referred generally to all proceedings that are
 
 “non-Maratkon
 
 ” bankruptcy matters.
 

 Finally, the fact that a claim in a bankruptcy matter raises issues of state, rather than federal, law does not by itself determine that it is non-core, rather than core. A claim by a creditor for money owed by the debtor, a trustee’s effort to set aside a preference, or a trustee’s decision as to who has a better claim might depend entirely upon such matters of state law as the validity of a lien or an interpretation of a state recording statute. For this reason, Congress specifically provided that the “determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.” 28 U.S.C. § 157(b)(3). It is the nature of the proceeding — its relation to the basic function of the bankruptcy court — not the state or federal basis for the claim, that makes the difference here.
 

 Article III.
 
 We now consider whether the determination that Arnold’s action is a core proceeding creates an unconstitutional interpretation of § 157(b). We believe that it does not. The Constitution permits a non-Article III bankruptcy court to adjudicate post-petition claims related to administration or liquidation of a debtor’s estate because the claims are both historically and functionally distinguishable from those at issue in
 
 Marathon.
 

 The Supreme Court has repeatedly turned to history and tradition to help define the type of adjudicatory proceeding that the Constitution reserves exclusively for Article III courts. In
 
 Thomas,
 
 for example, the majority explicitly stated that Marathon’s holding applied to “a
 
 traditional
 
 contract action arising under the state law.”
 
 Thomas,
 
 105 S.Ct. at 3335 (emphasis added);
 
 see also Marathon,
 
 458 U.S. at 64, 102 S.Ct. at 2867-68 (describing the history of the Article III exception for territorial courts). The Court has indicated that it will examine closely congressional attempts to control the adjudication of “rights [that] were
 
 historically ...
 
 subject to resolution by Article III courts.”
 
 See Schor,
 
 106 S.Ct. at 3259 (emphasis added).
 

 If one examines the jurisdictional history of post-petition claims of the sort in issue here, one finds that they are not “traditional contract actions”; nor are they matters that “historically” have been decided only in the equivalent of Article III courts. To the contrary, bankruptcy courts have adjudicated claims like this one at least since the enactment of the Bankruptcy Act of 1898. Indeed, they have done so in exercise of “summary jurisdiction” — a jurisdiction permitting the bankruptcy court to sit as a court in equity, deciding without a jury matters that a jury might have decided had a party pressed the same claim in a state court.
 
 See Katchen v. Landy,
 
 382 U.S. 323, 337, 86 S.Ct. 467, 477, 15 L.Ed.2d 391 (1966). Thus,
 
 Collier
 
 noted that under the 1898 Act, a
 

 court of bankruptcy has summary power over a delinquent purchaser at a sale in the bankruptcy proceedings. He may be ordered to pay the stipulated price or to pay the deficiency resulting from a resale. The jurisdiction of the court to act summarily in such a matter is the same as that of a court of equity in any judicial sale.
 

 4B King, Collier on Bankruptcy ¶ 70.98, at 1202-03 (14th ed. 1978).
 

 Similarly, in
 
 In re Alan Wood Steel Co.,
 
 1 B.R. 167, 169 (Bankr.E.D.Pa.1979), a bankruptcy case that thoroughly explains the treatment of this jurisdictional issue under the 1898 Act, the court commented that its power to hear and adjudicate summarily a receiver’s action to collect a post-petition account receivable was “crystal clear.” The court characterized the action as one arising out of a contract “with officers of [the] court and as such the con
 
 *170
 
 tracts [were] treated as contracts with the court itself.”
 
 Id.
 
 at 168. The court added:
 

 With respect to contracts made by trustees, debtors in possession and other officers of the bankruptcy court, the necessity of the court retaining exclusive jurisdiction over matters arising out of such contracts is even more pronounced than in the case of other matters arising during the administration of a bankrupt estate. The courts have therefore adopted an extreme position with respect to this and have ruled that a party contracting with an officer of the court in fact contracts with the court itself, and by such act
 
 subjects himself for the purposes of the contract to the summary jurisdiction of the
 
 court....
 

 Id.
 
 (quoting
 
 In re California Eastern Airways,
 
 95 F.Supp. 348, 351 (D.Del.1951)). Given potential court supervision of estate administration, the legal fiction that the debtor-in-possession is a court official and that the contract is with the court itself is a fiction that borders on the truth. It helps to distinguish the claim at issue here even on the view of Marathon’s plurality: Arnold makes the kind of claim that, historically speaking, might be characterized as raising matters of “public rights,” defined as those arising between the government and others.
 
 See Marathon,
 
 458 U.S. at 67, 102 S.Ct. at 2869.
 
 Marathon
 
 found no constitutional objection to a bankruptcy court deciding this sort of claim. Quite apart from the force of the fiction, the history of bankruptcy court jurisdiction means that a post-petition contract made with a debtor-in-possession cannot be called a “traditional” state contract action.
 

 To the extent that Article III reflects a concern for procedural fairness,
 
 see Crowell v. Benson,
 
 285 U.S. at 87, 52 S.Ct. at 306 (Brandeis, J., dissenting), this case again differs from
 
 Marathon.
 
 A party who contracts with an apparently healthy company — a company that has not filed a petition in bankruptcy — may find it unpleasantly surprising to have to defend its pre-petition contract in a bankruptcy court, without a jury or Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court. Parties who contract with a bankrupt company’s trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise.
 
 Cf.
 
 41 U.S.C. §§ 601 et. seq. (1982) (establishing that parties who enter into contracts with the government subject themselves to a set of administrative procedures for resolving disputes growing out of those contracts). The risk of unfairness is therefore smaller here than in
 
 Marathon.
 

 The resolution of separation of powers questions may also prove sensitive to practical considerations, such as the need to place in a single set of hands the various functions that Articles I, II, and III would otherwise keep separate.
 
 See Chadha v. Immigration & Naturalization Service,
 
 634 F.2d 408, 425 (9th Cir.1980) (“[Cjourts interpret separation of powers questions pragmatically, in order to preserve the essential design of the Constitution without imposing unworkable limitations.”),
 
 aff'd,
 
 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983);
 
 cf. Schor,
 
 106 S.Ct. at 3258 (considering whether there were practical reasons to find the CEA defective under Article III). If so, one might distinguish between a trustee in bankruptcy who
 
 marshals
 
 assets, as in
 
 Marathon,
 
 and a trustee in bankruptcy who
 
 manages
 
 and
 
 disposes of
 
 assets under bankruptcy court supervision, as in this case. One might reasonably believe that the risk of litigation in multiple forums would prove more disruptive in the latter instances than in the former. And to that extent, the need for orderly estate management, administration, and distribution would argue more strongly here than in
 
 Marathon
 
 for allowing adjudication by the bankruptcy court, despite its non-Article III characteristics.
 

 The narrow interpretation that the Supreme Court has given to
 
 Marathon,
 
 the history of bankruptcy court jurisdiction over actions like these, and the differences between this case and
 
 Marathon
 
 with respect to fairness and practicality, together convince us that Arnold’s claim may be
 
 *171
 
 heard by a non-Article III court. For the reasons we reviewed earlier, this case falls within the statutory category of core proceedings, so the case may be decided by a bankruptcy judge. We recognize that the bankruptcy court retains the power to abstain from deciding a case for reasons of justice, comity with State courts, or respect for State law, 28 U.S.C. § 1334(c)(1), but no such reason applies here.
 
 Cf In re Franklin,
 
 50 B.R. at 626 n. 8 (noting that “a finding that a matter is a core proceeding weighs heavily in favor of a denial of abstention”);
 
 In re Pioneer Development Corp., 47 B.R.
 
 624, 628 (Bankr.N.D.Ill. 1985) (commenting that “abstention would be totally unwarranted” when there has been a determination that a proceeding is core).
 

 The judgment of dismissal is vacated and the case is remanded to the bankruptcy court for proceedings not inconsistent with this opinion.
 

 APPENDIX
 

 TITLE 28
 

 § 157. Procedures
 

 (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
 

 (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
 

 (2)Core proceedings include, but are not limited to—
 

 (A) matters concerning the administration of the estate;
 

 (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliqui-dated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
 

 (C) counterclaims by the estate against persons filing claims against the estate;
 

 (D) orders in respect to obtaining credit;
 

 (E) orders to turn over property of the estate;
 

 (F) proceedings to determine, avoid, or recover preferences;
 

 (G) motions to terminate, annul or modify the automatic stay;
 

 (H) proceedings to determine, avoid, or recover fraudulent conveyances;
 

 (I) determinations as to the discharge-ability of particular debts;
 

 (J) objections to discharges;
 

 (K) determinations of the validity, extent, or priority of liens;
 

 (L) confirmations of plans;
 

 (M) orders approving the use or lease of property, including the use of cash collateral;
 

 (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
 

 (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
 

 (3) The bankruptcy judge shall determine, on the judge’s own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.
 

 (4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).
 

 
 *172
 
 (5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.
 

 (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge’s proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
 

 (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.
 

 (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.
 

 (Added Pub.L. 98-353, title I, § 104(a), July 10, 1984, 98 Stat. 340.)
 

 § 1334. Bankruptcy cases and proceedings
 

 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 

 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
 

 (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
 

 (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.
 

 (d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debt- or as of the commencement of such case, and of the estate.
 

 (June 25, 1948, ch. 646, 62 Stat. 931; Nov. 6, 1978, Pub.L. 95-598, title II, § 238(a), 92 Stat. 2667; July 10, 1984, Pub.L. 98-353, title I, § 101(a), 98 Stat. 333.)