## In re SHEPHERDS HILL DEVELOPMENT CO., LLC, Debtor.

Anthony F. Balzotti, Dawn Balzotti, Michael Balzotti, Thomas Iarrobino, Ann Burgess, and Edmond J. Ford, Trustee, Plaintiffs,

v.

RAD Investments, LLC and Robert A. Dianni, Defendants.

Bankruptcy No. 99–11087–JMD.
Adversary No. 00–1087–JMD.

United States Bankruptcy Court, D. New Hampshire.

May 15, 2001.

Opinion and Order
Denying Reconsideration
June 7, 2001.

Michael Mortimer, William Gannon, Wadleigh, Starr & Peters, PLLC, Manchester, NH, for Edmond Ford, Anthony Balzotti, Dawn Balzotti, Michael Balzotti, Thomas Iarrobino and Ann Burgess.

Mark McDonald, Ford and Weaver, P.A., Portsmouth, MA, for Edmond Ford, Chapter 11 Trustee.

Norman Novinsky, Novinsky & Babchuck, Brockton, MA, David R. Chenelle, Boudreau, Mitchell & Davis, Andover, MA, for Robert Dianni and RAD Investments, LLC.

Geraldine Karonis, Office of U.S. Trustee, Manchester, NH, for U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

J. MICHAEL DEASY, Bankruptcy Judge.

## I. INTRODUCTION

On June 30, 2000, Anthony F. Balzotti, Dawn Balzotti, Michael Balzotti, Thomas Iarrobino, Ann Burgess, and Edmond J. Ford, Chapter 11 Trustee, (the "Plaintiffs") commenced this adversary proceeding against RAD Investments, LLC and Robert A. Dianni·(the "Defendants"), seeking damages for breach of a post-petition purchase and sale agreement. After service by publication, the Defendants failed to answer and an Order Entering Default in the adversary proceeding was entered by the Court on January 24, 2001. See Adv. Doc. No. 14.[1] On February 21, 2001, the Court held a hearing regarding a motion for entry of a default judgment. At the February 21, 2001 hearing, counsel for the Defendants appeared for the first time and raised questions about entering the default judgement. Consequently, the Court continued the hearing to April 12, 2001 and set a deadline for the Defendants to file a motion to strike the entry of default. See Adv. Doc. No. 27.

On March 7, 2001, the Court issued an Order to Show Cause why the Order Entering Default should not be vacated and the adversary complaint should not be dismissed for lack of jurisdiction. See Adv. Doc. No. 31. On April 12, 2001, the Court held a hearing on the Order to Show Cause and the Defendants', RAD Investments, LLC and Robert A. Dianni, Motion to Strike Default· Judgment[2] (the "Motion to Strike") filed by the Defendants (Adv. Doc. No. 35). At the end of the hearing the Court took the Order to Show Cause and the Defendants' Motion to Strike under submission.

## II. FACTS

On April 2, 1999, Shepherds Hill Development Co., LLC (the "Debtor") filed a Chapter 11 bankruptcy petition in this Court. The Debtor and several of the Plaintiffs attempted· to find new investors or to sell its development project to a third party. By November of 1999 an interested buyer had been identified and a purchase and sale agreement had been signed, subject to approval by the Court. The Debtor sought Court approval for bidding procedures and an order authorizing the sale. Shortly thereafter, on December 3, 1999, the Plaintiffs, along with the other members of the Debtor (collectively the "Members"), filed a Motion to Dismiss the case. See Bkr. Doc. No. 45.[3] The Members sought to have the case dismissed so they could sell their membership interests to the Defendants for $19,000,000.00. Attached to the Motion to Dismiss was a

---

1. In this opinion the term "Adv. Doc." refers to the docket in this adversary proceeding, Adv. No. 00–1087–JMD.

2. While the Defendants' motion was captioned as one to strike a default judgment, in reality it was a motion to strike the Court's entry of default, as the Court had not yet entered a default judgment.

3. In this opinion the term "Bkr. Doc." refers to the docket in the main bankruptcy case, Bk. No. 99–11087–JMD.

copy of the agreement for the sale of the membership interests signed by the Plaintiffs and Robert Dianni as the managing member of RAD Investments, LLC (the "RAD Agreement"). The RAD Agreement was subject to dismissal of the Chapter 11 proceeding and provided for payment in full of the Debtor's unsecured creditors outside of a plan of reorganization and for payment to the Members for their membership interests. The Debtor was not a party to the RAD Agreement.

At the hearing on the Debtor's application to sell the project, a new buyer, W.O. Brisben Companies, Inc. submitted a higher offer. On December 23, 1999, the Court granted the Debtor's application to sell the project to the new buyer, and approved the form of a purchase and sale agreement between the Debtor and W.O. Brisben Companies, Inc. (the "Brisben Agreement"). The rights and obligations of the parties under the Brisben Agreement were subject to certain conditions relating to financing and land use matters as well as resolution of the Motion to Dismiss on or before January 24, 2000. *See* Bkr. Doc. No. 67. By January 24, 2000, the RAD Agreement had collapsed due to the alleged failure of the Defendants to transfer to the Plaintiffs the money necessary to obtain dismissal of the Chapter 11 proceeding. In the absence of money necessary to pay creditors' claims, the Motion to Dismiss was denied. *See* Bkr. Doc. No. 72.

The Court subsequently approved the U.S. Trustee's motion to appoint a trustee and the Chapter 11 Trustee was appointed on February 22, 2000. *See* Bkr. Doc. No. 101. On March 29, 2000, the Chapter 11 Trustee filed a liquidating plan and disclosure statement (together with all subsequent amendments hereinafter the "Trustee's Plan") as an alternative to the sale contemplated in the Brisben Agreement. In late April, the Brisben Agreement expired when the buyer failed to act in a timely manner to extend the time permitted to satisfy the conditions in the Brisben Agreement. *See In re Shepherds Hill Development Co. LLC,* 2000 BNH 012.

On May 2, 2000, Plaintiff Caesar Balzotti and a creditor filed a liquidating plan and disclosure statement as an alternative to the Trustee's Plan (together with all subsequent amendments hereinafter the "Caruso Plan"). The Chapter 11 Trustee and the proponents of the Caruso Plan filed a series of amendments to their respective plans and ultimately agreed that the competing plans would proceed to a confirmation hearing on parallel tracks.

On June 30, 2000, the Plaintiffs commenced this adversary proceeding against the Defendants seeking damages for breach of a purchase and sale agreement, negligent misrepresentation and detrimental reliance, violation of the New Hampshire Unfair Business Practices Act, and violation of the common law covenants of good faith and fair dealing. *See* Adv. Doc. No. 1. The complaint specifically stated that the Chapter 11 Trustee, Edmond Ford, (the "Trustee") had been granted an assignment of the first $200,000.00 of any money recovered (the "Assignment").[4] Further, the Trustee was only joined in the first count of the complaint alleging breach of a purchase and sale agreement. On July 21, 2000 the Caruso Plan was

4. It appears on face of the documents that the Trustee was gratuitously granted the first $200,000.00 recovered in this suit. However, at the April 12, 2001 hearing it was revealed that the Assignment was the result of negotia-tions between the Plaintiffs and the Trustee relating to his agreeing to continue the confirmation hearing on the Trustee's Plan to permit the Caruso Plan and the Trustee's Plan to proceed on parallel tracks.

confirmed by this Court. *See* Bkr. Doc. No. 294.

## III. DISCUSSION

In 1982 the Supreme Court held that the pervasive grant of jurisdiction over all matters pertaining to bankruptcy cases to the bankruptcy courts contained in the 1978 Bankruptcy Reform Act[5] was unconstitutional. *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Congress responded to the *Marathon* decision through enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984.[6] The 1978 Bankruptcy Reform Act had given bankruptcy jurisdiction to the United States district court, but it was required to be exercised by the bankruptcy court. 1 RICHARD F. BROUD ET AL., COLLIER ON BANKRUPTCY ¶ 1.02[2] (Lawrence P. King et al. eds., 15th Ed. Revised 2001). Under the 1984 amendments, the district court can, but need not, refer matters to the bankruptcy court and the district court has the authority to control the exercise by the bankruptcy court of the jurisdictional referral. *Id.*

█ Under 28 U.S.C. § 157(a) district courts are allowed to automatically refer "all proceedings arising under title 11 or arising in or related to a case under title 11 ..." to the bankruptcy court for the district. The United States District Court for the District of New Hampshire has chosen to make use of its referral power and automatically refers any cases arising under, arising in, or related to title 11 to the bankruptcy judges of the district. *See* Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire, dated January 18, 1994 (Diclerico, C.J.). However, the referral of cases to the bankruptcy court does not confer on the bankruptcy court unlimited power to hear and determine cases.

█ Under 28 U.S.C. § 157(b) bankruptcy courts have jurisdiction to hear and make determinations on any "core" proceedings that arise under title 11 or arise in a case under title 11. "Proceedings *arise under* title 11 if they involve a cause of action created or determined by a statutory provision of the bankruptcy code." *Work/Family Directions, Inc. v. Children's Discovery Ctr., Inc. (In re Santa Clara County Child Care Consortium),* 223 B.R. 40, 43 n. 2 (1st Cir. BAP 1998) (emphasis added) (quoting *Goldstein v. Marine Midland Bank, N.A. (In re Goldstein),* 201 B.R. 1, 4 (Bankr.D.Maine 1996) (citations omitted)). "Proceedings *arising in* a bankruptcy case are those that are not based on any right expressly created by title 11, but nevertheless would have no existence outside of the bankruptcy." *Id.* at n. 3 (emphasis added).

In *Marathon,* the Supreme Court ruled that bankruptcy courts did not have jurisdiction to adjudicate cases where a debtor brings a state law contract action against a private party when the underlying claim the debtor was seeking damages for arose pre-petition. In 1987 the Court of Appeals for the First Circuit held that bankruptcy courts did, however, have jurisdiction over contract actions that arose post-petition and that were made as part of the debtor's attempts to liquidate estate assets. *See Arnold Print Works, Inc. v. Apkin,* 815 F.2d 165 (1st Cir.1987). The court in *Arnold* reasoned that persons entering contracts with the debtor post-petition would know of the debtor's condition and would expect to have any controversies ruled

---

**5.** Pub.L. No. 95–598 (1978).

**6.** Pub.L. No. 98–353 (1984).

upon by the bankruptcy court. *See Arnold,* 815 F.2d at 170.

■ In the case before this Court, the contract in dispute did arise post-petition. However, unlike *Arnold* the contract was not between the Debtor and third parties. The contract underlying the dispute in this adversary proceeding was between the Members and the Defendants. Furthermore, the dispute does not involve a cause of action that is created by a provision of the Bankruptcy Code and the dispute could exist outside of a bankruptcy proceeding. Accordingly, the Court finds that this adversary proceeding is a not a core proceeding that "arises under" or "arises in" a case under title 11.

■ Although this case is not a core proceeding, the Court may still hear the proceeding if it is a proceeding related to title 11.[7] "Related to" jurisdiction is the most expansive of the three types of jurisdiction referred to in 28 U.S.C. § 157. *See Work/Family Directions, Inc.,* 223 B.R. at 40 n. 4. Proceedings related to title 11 "are those whose outcome could conceivably have an effect on the bankruptcy estate, and which (1) involve causes of action owned by the debtor that became property of a title 11 estate under § 541, or (2) are suits between third parties which 'in the absence of bankruptcy, could have been brought in a district court or a state court,'" *Id.* at 44 (citations omitted).

■ The case before the Court involves a contract dispute between two non-debtor third parties. In the absence of bankruptcy, such a breach of contract claim could be brought in a state court. Further, through the provisions of the plan of reorganization and the agreement that was made with the Trustee, the outcome of the proceeding will have an effect on the bankruptcy estate. Accordingly, the Plaintiffs argue that the Court has at least "related to" jurisdiction over this adversary proceeding.

While the Plaintiffs' argument that the Court has "related to" jurisdiction over this adversary proceeding is sufficient to warrant a test drive, on the facts of this case the Court cannot accept the jurisdictional argument. The breach of contract claim that is the underlying dispute in this case arose in late January of 2000 when the Defendants allegedly failed to timely supply the money that was required under the RAD Agreement. At the time the breach of contract claim arose the bankruptcy estate was in no way affected by the claim. The claim did not belong to the Debtor, as the Debtor was not a party to the RAD Agreement, and the claim was not property of the estate. Accordingly, the Court did not have even "related to" jurisdiction over the breach of contract claim at the time the claim arose.

While the Plaintiffs have argued that the outcome of the proceeding affects the estate because of the Assignment and the payments due to creditors under the Caruso Plan, the Court finds that it is not possible to create jurisdiction by using the proceeds of a claim or a pending suit to fund a plan of reorganization or by assignment of a portion of such claim or suit to the Trustee. If plan proponents could use such methods to create jurisdiction in the bankruptcy courts where it would not otherwise exist, jurisdiction over any case or controversy could be created in the bankruptcy courts in contravention of the Supreme Court's ruling in *Marathon.* The

---

7. Unless the parties expressly or impliedly consent in a non-core related to proceeding, the bankruptcy court may only make proposed findings of facts and conclusions of law that must be submitted to the district court for review and entry of a final judgment. *See* 28 U.S.C. § 157(c).

Supreme Court has ruled that bankruptcy courts are courts of limited jurisdiction. This Court did not have jurisdiction over this adversary proceeding before the Assignment and before confirmation of the Caruso Plan. Accordingly, the Court finds that it does not have jurisdiction over this case.

## IV. ORDER

In accordance with this Memorandum Opinion, the Court finds and rules that:

1. The Court does not have jurisdiction to hear this adversary proceeding.

2. .The Court's previous order entering default in this adversary proceeding is **vacated** as the Court had no jurisdiction to enter any such order.

3. This adversary proceeding is hereby **dismissed** for lack of jurisdiction.

4. The Defendants' Motion to Strike is **denied** as moot.

5. Any other matters remaining open in this adversary proceeding are **denied** as moot.

This opinion and order constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

On May 24, 2001, the Plaintiffs' Motion for Reconsideration (the "Motion") was filed by Anthony F. Balzotti, Dawn Balzot-ti, Michael Balzotti, Thomas Iarrobino, and Ann Burgess (collectively the "Plaintiffs").[1] The Plaintiffs were seeking reconsideration of the Court's May 15, 2001 Memorandum Opinion and Order dismissing the above captioned adversary proceeding on grounds that the Court did not have jurisdiction over the matter. *See Balzotti v. RAD Invs., LLC (In re Shepherds Hill Dev. Co., LLC)*, 2001 BNH 026. For the reasons discussed below the Motion is denied.

## II. FACTS [2]

On April 2, 1999, Shepherds Hill Development Co., LLC (the "Debtor") filed a Chapter 11 bankruptcy petition in this Court. The Debtor and several of the Plaintiffs attempted to find new investors or to sell its development project to a third party. By November of 1999 an interested buyer had been identified and a purchase and sale agreement had been signed, subject to approval by the Court. The Debtor sought Court approval for bidding procedures and an order authorizing the sale. Shortly thereafter, on December 3, 1999, the Plaintiffs, along with other parties, filed a Motion to Dismiss the case. *See* Bkr. Doc. No. 45.[3] The Plaintiffs sought to have the case dismissed so they could sell their membership interests to RAD Investments, LLC and its sole managing member Robert Dianni (the "Defendants") for $19,000,000.00. Attached to the Motion to Dismiss was a copy of the agreement for the sale of the membership

---

1. The Plaintiffs along with Pamela Dritt also constitute the members of the Debtor. For the purposes of clarity, when referring to the sale of membership interests later in this opinion the term Plaintiffs will be used even though the Plaintiffs do not constitute the entire group of persons who were selling their membership interests.

2. The facts recited in this opinion will be those specifically related to the claims raised by the Plaintiffs in the Motion. For a more extensive recitation of the facts of this case see the Court's May 15, 2001 Memorandum Opinion and Order. 2001 BNH 026.

3. In this opinion the term "Bkr. Doc." refers to the docket in the main bankruptcy case, Bk. No. 99–11087–JMD.

interests signed by the Plaintiffs and Robert Dianni as the managing member of RAD Investments, LLC (the "RAD Agreement"). The Debtor was not a party to the RAD Agreement.

Specifically, the RAD Agreement called for the transfer of $10,000,000.00 of the proceeds to an escrow agent. The escrow agent was to use the money to pay the claims of all creditors holding timely filed, undisputed claims against the Debtor. The escrow agent was also to establish a separate account in which 125% of the amount of all disputed claims was to be placed until such time as the Court determined the allowed amount of such claims. After payment of all allowed claims, the escrow agent was to disburse any remaining funds to the Plaintiffs on account of the sale of their membership interests. The obligation of the Defendants under the RAD Agreement to purchase the Plaintiffs' membership interests, however, was subject to dismissal of the Chapter 11 proceeding.

By January 24, 2000, the RAD Agreement had collapsed due to the alleged failure of the Defendants to transfer to the Plaintiffs the money necessary to obtain dismissal of the Chapter 11 proceeding. In the absence of money necessary to pay creditors' claims, the Motion to Dismiss was denied. *See* Bkr. Doc. No. 72. On June 30, 2000, the Plaintiffs commenced this adversary proceeding against the Defendants seeking damages for breach of the RAD Agreement, negligent misrepresentation and detrimental reliance, violation of the New Hampshire Unfair Business Practices Act, and violation of the common law covenants of good faith and fair dealing. *See* Adv. Doc. No. 1.[4]

4. In this opinion the term "Adv. Doc." refers to the docket in this adversary proceeding,

## III. DISCUSSION

### A. Motion for Reconsideration

■ A "motion for reconsideration" is not a motion that is recognized by the Federal Rules of Civil Procedure ("Rule"). *In re Rodriguez*, 233 B.R. 212, 218–19 (Bankr.D.P.R.1999) (citations omitted). "The federal courts have consistently stated that a motion so denominated which challenges the prior judgment on the merits will be treated as either a motion 'to alter or amend' under Rule 59(e) or a motion for 'relief from judgment' under Rule 60(b)." *Id.* "Which rule applies depends essentially on the time a motion is served. If a motion is served within ten days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e). If the motion is served after that time, it falls under Rule 60(b)." *Id.*

■ In this particular case, the Motion was filed within ten days of the court's ruling. *See* Adv. Doc. No. 79. Accordingly, the Court will treat the motion as one filed under Rule 59(e), as it has been made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9023. In order to be successful on a Rule 59(e) motion, a moving party must establish a manifest error of law or fact or must present newly discovered evidence. *See Landrau–Romero v. Banco Popular de Puerto Rico*, 212 F.3d 607, 612 (1st Cir. 2000).

Although not specifically stated in their Motion, the Plaintiffs appear to claim that the Court made a manifest error of law in rendering its decision. The Plaintiffs claim that the Court failed to recognize that the Debtor was a third-party beneficiary to the RAD Agreement, and as such,

Adv. No. 00–1087–JMD.

made a manifest error of law in determining that the Court did not have jurisdiction over the proceeding.

### B. Third–Party Beneficiary

■ The Plaintiffs assert that the Debtor was a third-party beneficiary to the RAD Agreement. As previously mentioned, the Plaintiffs argue that due to the Debtor's status as a third-party beneficiary the Court has jurisdiction over this matter.

> A third-party beneficiary relationship exists if (1) the contract calls for a performance by the promisor which will satisfy some obligation owed by the promisee to the third party, or (2) the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract.

*Tamposi Assocs., Inc. v. Star Market Co. Inc.,* 119 N.H. 630, 633, 406 A.2d 132 (1979) (citations omitted). "A benefit to a third party is a 'motivating cause' of entering into a contract only where the promisee intends 'to give the beneficiary the benefit of the promised performance.'" *Grossman v. Murray,* 144 N.H. 345, 348, 741 A.2d 1218 (1999) (quoting Restatement (Second) of Contracts § 302(1)(b) (1981)).

■ "Unless the performance required by the contract will *directly* benefit the would-be intended beneficiary, he is at best an incidental beneficiary." *Pub. Serv. Co. of New Hampshire v. Hudson Light and Power Dep't,* 938 F.2d 338, 342 (1st Cir.1991) (citations omitted) (quoted by *Grossman,* 144 N.H. at 348, 741 A.2d at 1218).[5] An incidental beneficiary is one who is neither the promisee of the contract nor the party to whom service will be rendered, but instead is one who will derive a benefit from performance of the contact. *Pub. Serv.,* 938 F.2d at 343 n. 12.

■ The Plaintiffs claim that the Debtor is a third-party beneficiary because the RAD Agreement calls for the Defendants to satisfy an obligation owed by the Plaintiffs to the Debtor. The Court disagrees. The Plaintiffs did not owe any obligation to the Debtor. The Plaintiffs were simply equity holders of the Debtor. The Plaintiffs were not obligated to pay the creditors of the Debtor. As a limited liability corporation, creditors of the Debtor had no recourse against the Plaintiffs and the Plaintiffs were under no obligation to pay such creditors. The Plaintiffs were only interested in paying the Debtor's creditors so that the Chapter 11 proceeding could be dismissed, which was a condition precedent to the Defendants' obligation to purchase their membership interests. The Plaintiffs owed no obligation to the Debtor and, therefore, the Plaintiffs have failed to establish that the Debtor was a third-party beneficiary under the first element in *Tamposi.*

The Plaintiffs also contend that the Debtor is a third-party beneficiary under the second element in *Tamposi.* While not clearly articulated, the Plaintiffs seem to claim that because the RAD Agreement specifically mentioned payment of the Debtor's creditors, the Defendants knew that one of the motivating causes for the Plaintiffs entering into the RAD Agreement was the payment of the Debtor's

---

**5.** Although *Public Service* involved Massachusetts law concerning third-party beneficiaries, Massachusetts third-party beneficiary law follows the third-party beneficiary rules of the Restatement (Second) of Contracts. *See Pub. Serv.,* 938 F.2d at 341. The Supreme Court of New Hampshire has also relied upon the Restatement (Second) of Contracts when rendering its decisions in third-party beneficiary cases. *See Grossman,* 144 N.H. at 348, 741 A.2d at 1218. Accordingly, the Court finds citation to *Public Service* appropriate in this case.

creitors. The Court rejects the Plaintiffs' argument for two reasons.

First, under the standard set forth in *Grossman,* in order to be a motivating cause the promisee had to intend to give the beneficiary the benefit of the performance. In this case, the Plaintiffs are clearly the promisee, but the beneficiary of the promise was not the Debtor. The beneficiaries of the RAD Agreement were the unsecured creditors that were to receive payment in full of their claims. The creditors were the parties that were to directly benefit from fulfillment of the terms of the RAD Agreement. Although the Debtor may have benefitted from the RAD Agreement, the Debtor was neither the promisee nor the party to whom performance was to be rendered. As such, the Debtor was only an incidental beneficiary of the RAD Agreement.

Second, even assuming for the sake of argument that the Debtor was a beneficiary of the RAD Agreement, the Court cannot find that the payment of the Debtor's creditors was a motivating cause for the Plaintiffs entering into the RAD Agreement. The rule as set forth in *Tamposi* requires that a benefit to a third party be one of the motivating causes for the promisee (the Plaintiffs) entering into the contract. *Tamposi,* 119 N.H. at 633, 406 A.2d 132. Paying the Debtor's creditors was not one of the motivating causes the Plaintiffs had when they entered into the RAD Agreement.

The Plaintiffs entered into the RAD Agreement for the purpose of selling their equity interests in the Debtor. The Debtor's bankruptcy proceeding imposed no legal impediment to the sale of their membership interests. The Defendants, however, would only purchase the Plaintiffs' equity interests if the Debtor were no longer a Chapter 11 debtor. Therefore, the Plaintiffs were required to obtain dismissal of the Debtor's bankruptcy case in order to satisfy a condition precedent imposed by the Defendants. Under section 1112(b) of the Bankruptcy Code, a Chapter 11 case will only be dismissed if it is in the best interests of creditors and the estate. In this case, the Plaintiffs knew that it was highly unlikely that the bankruptcy proceeding would be dismissed unless the Debtor's creditors were paid in full. *See, e.g., In re Kingbrook Dev. Corp.,* 37 Bankr.Ct. Dec. (LRP) 218 (Bankr.W.D.N.Y.2001).

The Court finds that none of the motivating causes for the Plaintiffs entering into the RAD Agreement was the payment of the Debtor's creditors. The Plaintiffs entered into the RAD Agreement in order to sell their equity interests. As a condition precedent to the Defendants' obligation to purchase such interests, the Plaintiffs were required to obtain dismissal of the Debtor's Chapter 11 case. The Plaintiffs' motivation in agreeing to pay the Debtor's creditors from their sale proceeds was to satisfy a condition precedent imposed by the Defendants. Accordingly, the Debtor was not a third-party beneficiary of the RAD Agreement under the second element of *Tamposi.*

## C. Jurisdiction Over Third–Party Beneficiaries

 Assuming for the moment, that the Debtor was a third-party beneficiary of the RAD Agreement rather than an incidental beneficiary, the Court still would not have jurisdiction over this matter. Bankruptcy courts are not courts of general jurisdiction. Bankruptcy courts are courts of limited jurisdiction, and this proceeding goes beyond the jurisdiction of this Court.

As the Court pointed out in its May 15, 2001 Memorandum Opinion and Order, the Supreme Court has clearly indicated in its

decision in *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that bankruptcy courts are courts of limited jurisdiction. *See Balzotti v. RAD Invs., LLC (In re Shepherds Hill Dev. Co., LLC)*, 2001 BNH 026 at 5–7. If third-party beneficiary status were enough to confer jurisdiction upon the Court in this case, the Court would be acting contrary to the spirit, if not the letter, of the Supreme Court's decision in *Marathon*. If the Court permitted the Plaintiffs in this case to create jurisdiction by claiming that the Debtor is a third-party beneficiary, it would at worst give bankruptcy courts virtually unlimited jurisdiction over non-core matters, and at best, jurisdiction would only be limited by the creativity of any party in interest or their counsel. Accordingly, even if the Debtor were a third-party beneficiary of the RAD Agreement the Court finds that it would not have jurisdiction over the matter.

## IV. CONCLUSION AND ORDER

As the Plaintiffs have failed to present newly discovered evidence and have failed to establish that the Court made a manifest error of fact or law in rendering its previous decision in this matter, the Plaintiffs have failed to meet their burden under Rule 59(e) and the Motion is **denied**.

This opinion and order constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.