## In re BOSTON REGIONAL MEDICAL CENTER, INC., Debtor.

### Boston Regional Medical Center, Inc., Plaintiff,

v.

### Hanson S. Reynolds and Gary Douglas Rose, in their capacities as Co–Trustees of the Elizabeth Krauss Revocable Trust, the Elizabeth Krauss Charitable Remainder Annuity Trust, and the Elizabeth Krauss 1998 Charitable Remainder Annuity Trust, and the Attorney General of the Commonwealth of Massachusetts, Through the Division of Public Charities of the Office of the Attorney General, Defendants,

and

### First Lutheran Church and the First Church of Christ, Scientist, Intervenors.

Bankruptcy No. 99–10860–CJK.
Adversary No. 00–1390.

United States Bankruptcy Court, D. Massachusetts.

Aug. 20, 2001.

Harold Murphy, Boston, MA, for Debtor/Plaintiff.

Theodore Dinsmoor, Boston, MA, for the First Church of Christ, Scientist.

Michael Gilleran, Boston, MA, for First Lutheran Church.

Lawrence McCarthy, Boston, MA, for Gary Douglas Rose, Co–Trustee.

Hanson Reynolds, Boston, MA, for himself as Co–Trustee.

Deirdre Rosenberg, Boston, MA, for Attorney General.

### MEMORANDUM OF DECISION AND ORDER ON MOTION OF FIRST LUTHERAN CHURCH TO DISMISS AND ON MOTION OF THE FIRST CHURCH OF CHRIST, SCIENTIST, TO ABSTAIN

CAROL J. KENNER, Bankruptcy Judge.

Elizabeth Krauss died on March 1, 1998, leaving to the Debtor, Boston Regional Medical Center, through three testamentary trusts, a one-third interest in the residue of each trust, provided that the Debtor continued to be a charitable organization, as defined in the trusts, at the time of distribution. The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on February 4, 1999, and discontinued hospital operations within a few days thereafter. By its amended complaint in this adversary proceeding, the Debtor, acting as liquidating agent under its confirmed Chapter 11 plan, seeks an order directing the Co–Trustees of the three trusts to turnover to the Debtor the funds representing its one-third interest in the residue of each trust.[1] In their answers, the Co–Trustees state that they have no position on whether the Debtor is entitled to a distribution from the trusts. The other two residuary legatees/beneficiaries, First

1. The Debtor also seeks accountings from the Trustees of the trusts' receipts and disbursements from the date of Elizabeth Krauss's death.

Lutheran Church and The First Church of Christ, Scientist, as intervenors herein, oppose the request for turnover, taking the position that the Debtor, by virtue of its financial difficulties and ultimate discontinuance of hospital operations, had, by the date of distribution, ceased to be a charitable organization within the meaning of the trust.[2]

By the motions now before the Court, First Lutheran Church moves that the complaint be dismissed, and The First Church of Christ, Scientist, moves that the Court abstain under 28 U.S.C. § 1334(c)(1) from adjudicating the complaint. In support of both motions, the intervenors contend that this adversary proceeding is not a "core proceeding" within the meaning of 28 U.S.C. § 157(b), and, therefore, that the Bankruptcy Court does not have authority, without the consent of the parties, to finally adjudicate the complaint. Neither intervenor consents to this Court's entering final judgment on the complaint, but both concede that the adversary proceeding is at least "related to a case under title 11 [the Bankruptcy Code]" within the meaning of 28 U.S.C. § 157(a) and (c) and that, if this is not a core proceeding, the Court may hear the matter and make proposed findings of fact and conclusions of law with respect to the matter, subject to review de novo by the District Court. See 28 U.S.C. § 157(c)(1) and F.R.BANKR.P. 9033. Nonetheless, the intervenors contend that, for reasons of comity with the state courts and judicial economy, the Court should reject this option and simply abstain. In response, the Debtor argues that the matter is a core proceeding but also that, if the matter is non-core, the court should retain jurisdiction to make proposed findings and conclusions.

### Core Proceeding?

■■■ Is the subject matter of this adversary proceeding a core proceeding

---

**2.** The First Lutheran Church and The First Church of Christ, Scientist, have been permitted to intervene in order to defend their interests. With respect to one of the three trusts, the Elizabeth Krauss Revocable Trust, those interests appear to be fixed and clear: if the gift to one of the three residuary beneficiaries should fail, that gift would, by operation of the trust, devolve in equal parts to those that remain. With respect to the other trusts, the Charitable Remainder Annuity Trusts, the intervenors' "interests" are more in the nature of expectancies than fixed and certain rights. According to the language of both trusts, as set forth in the complaint and in the intervenors' own recitations of fact, if a charitable organization that is specified to receive a distribution under the trust is not still a qualifying charitable organization at the time when any principal or income of the trust is to be distributed to it, then the trustees shall distribute such principal and income to whatever qualifying charitable organizations the trustees select in their discretion, taking into account the wishes of the donor, Ms. Krauss, as best they can be ascertained. In short, the intervenors would have no automatic right to the funds intended for Boston Regional Medical Center. The right to designate a substitute beneficiary of the assets in these two trusts is entirely the trustees'. The intervenors expect that they would be named as substitute beneficiaries—they state that one of the Co-Trustees has so assured them—but I am not aware that any designation has yet been made. Presumably, the Trustee's could, within their rights, name other organizations as substitute beneficiaries.

In allowing their motion to intervene with respect to these two trusts, the Court has, in essence, ruled that the intervenors' expectancies give them sufficient interest to allow them to intervene and oppose the Debtor's complaint. However, that ruling should not be construed as a determination that the intervenors may or should be named as substitute beneficiaries. In this adversary proceeding, the Court will determine only the validity of the Debtor's interests in the trusts. Should the Court determine that the gifts to the Debtor fail, the Court will make no ruling on the alternate disposition of the funds. That disposition would have no effect on this bankruptcy case whatsoever and therefore would fall entirely outside of this Court's jurisdiction.

within the meaning of 28 U.S.C. § 157(b)? The word "core" is used in § 157(b)(1) to denote those proceedings as to which a bankruptcy judge may, without consent of the parties, enter final orders and judgment. Section 157(b)(2) lists various core proceedings, but the list is not exclusive, and the statute does not otherwise define "core." To qualify as core, a proceeding must meet two qualifications. The first is statutory authority: the matter must be one as to which Congress, in § 157(b), has given the bankruptcy courts authority to make final judgments. The second is constitutionality: the matter must be one as to which Congress has the power under Article I of the Constitution to authorize a specialized, non-Article III judge to render a final decision. The statutory authority granted in § 157(b)(1) is broad in scope, see § 157(b)(2)(A) and (O), and was intended by Congress "to be interpreted broadly, close to or congruent with the constitutional limits"; it includes generally "all proceedings that are *'non-Marathon'* bankruptcy matters." *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168–169 (1st Cir.1987). Therefore, the Court will focus principally on constitutionality. Under the guiding precedent in this Circuit, construing the Supreme Court's decision in *North-*

*ern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), a proceeding can constitutionally be delegated to the bankruptcy court only if it is integral to the basic function of the bankruptcy court and historically has been entrusted to the bankruptcy court, not reserved exclusively for Article III courts.[3]

The Trustee contends that this proceeding is, in essence, one for turnover of an asset of the estate and, as such, a core proceeding. See 28 U.S.C. § 157(b)(2)(E) ("Core proceedings include ... orders to turn over property of the estate."). According to the Debtor, the Debtor's beneficial interests in the trusts, and the Debtor's concomitant right to distribution of trust assets, vested upon Ms. Krauss's death, which occurred *before* the commencement of this bankruptcy proceeding. Therefore, upon the Debtor's bankruptcy filing, the Debtor had existing interests in the trust assets, which interests became assets of the bankruptcy estate, and the Debtor now merely seeks turnover under 11 U.S.C. § 542(a) of its share of the trust assets; in the Debtor's view, the intervenors are seeking to divest the estate of an existing property right.[4]

---

3. *In re Arnold Print Works, Inc.*, 815 F.2d 165, 169 (1st Cir.1987) (action on postpetition contract is deemed a core proceeding because, although it arises under state law, it is integral to the basic function of the bankruptcy court and is of a kind that historically has been subject to resolution in the bankruptcy court). See also *Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987) (proceeding is core only "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case"); *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir.1990) (same); and *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir.1990) ("Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings.").

4. The Debtor does not go so far as to contend that the intervenors are asserting claims against the estate. Neither intervenor has filed a proof of claim in this case.

I reject out of hand any suggestion that this litigation concerns, in essence, just a claim against the estate, in the sense of an attempt by the intervenors to divest the estate of an asset as to which it has title. (Claims against the estate are core proceedings. 28 U.S.C. § 157(b)(2)(B).) Without prejudging the merits, the operative trusts do not appear to confer rights that are later subject to divestiture. Rights became fixed at some point in time, at which point the right to a distribution became the Debtor's, without possibility of divestiture, or did not. But even if the estate could, under the operative trusts, acquire rights that were later subject to divestiture, it would still

The intervenors take the position that this action is not truly a turnover action at all. Rather, it is one to determine the validity of the Debtor's alleged interests in and rights under the trusts, as of the date of the bankruptcy filing. To this extent, the action involves no rights arising under the Bankruptcy Code and is not central to the bankruptcy process. Rather, it is a matter of state law on estates and trusts that might as easily have been brought by the Debtor before this bankruptcy case was commenced. Therefore, the intervenors maintain, this is not a core proceeding.

■ Section 157(b)(2)(E) states that core proceedings include "orders to turn over property of the estate." 28 U.S.C. § 157(b)(2)(E). The proper subject of a turnover proceeding, at least in the sense that a turnover action is a core proceeding, is the right of the bankruptcy trustee (or the debtor in possession, exercising the rights of a trustee) to *possession* of assets of the bankruptcy estate. Therefore, a turnover proceeding seeks to enforce the obligations of the debtor (under 11 U.S.C. § 521(4)) or of other entities who are in possession, custody, or control of assets of the estate (under 11 U.S.C. § 542(a)) to deliver, surrender, or "turn over" to the trustee such property · of the bankruptcy estate as is in their possession during the pendency of the bankruptcy case. It is not a proceeding to determine the validity or extent of the estate's interest in the property at issue, though often a turnover count will be joined with such a proceeding. In the turnover action proper, the validity of the estate's interest is not at issue; only the trustee's right to possession of an asset that, by admission or separate adjudication (separate, that is,

from the turnover count), is an asset of the estate. A turnover action is a core proceeding in the constitutional sense because it is the enforcement mechanism by which the trustee (or debtor in possession) is able to marshal the assets of the estate for the benefit of creditors, a function that is certainly central and integral to the bankruptcy process.

■ The present action involves at least two distinct parts: a claim for enforcement of the Debtor's alleged right to a distribution of funds in certain trusts in which the estate claims to have equitable interests (though not yet legal title) that arose prepetition; and a request to determine the validity and extent of such prepetition interests and rights to distribution. The former may or may not be a turnover proceeding, but the latter certainly is not, at least not in the narrow sense in which a turnover action is a core proceeding. As the intervenors argue, the latter portion of the trustee's complaint involves no rights arising under the Bankruptcy Code and is not central to the bankruptcy process. Rather, it is a matter of state law on estates and trusts that might as easily have been brought by the Debtor before this bankruptcy case was commenced. Historically, this type of action that has been adjudicated by state courts, not specially assigned to bankruptcy courts. This portion of the complaint seeks to determine the validity of prepetition property rights that, by virtue of the bankruptcy filing and 11 U.S.C. § 541(a)(1) (the estate includes all legal and equitable interests of the debtor in property as of the commencement of the case), now belong to the bankruptcy estate. For these reasons, it does not differ materially from the prepetition contract action that, in *Marathon*, the

be necessary for the Trustee to establish that the Debtor, and therefore the estate, acquired

any rights in the first place.

Supreme Court held that a federal bankruptcy judge, for want of Article III status, lacked the constitutional power to adjudicate. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Accordingly, insofar as the Debtor's complaint seeks or requires a determination of the validity and extent of the Debtor's prepetition rights in the trusts, it is not a core proceeding. Lacking the intervenors' consent, this Court may not finally adjudicate the matter.[5]

### Abstention

■ Though the Trustee's complaint is not entirely a core proceeding, it clearly is "related to" this bankruptcy case within the meaning of § 157(a) and (c)(1). Under the widely accepted test, a proceeding is "related to" a bankruptcy case within the meaning of 28 U.S.C. § 1334 and 157, the bankruptcy jurisdiction statutes, if its outcome "could conceivably have any effect on the estate being administered in bankruptcy." *In re Hall's Motor Transit Co.*, 889 F.2d 520 (3rd Cir.1989), citing *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984) (interpreting the phrase as it appeared in (now repealed) 28 U.S.C. § 1471(b)). The Debtor's complaint, if successful, would enrich the estate and the dividend to creditors in this case and would thus have a substantial effect on the estate and the

case. The complaint is therefore "related to" the bankruptcy case.

■ In accordance with § 157(c)(1), this Court may hear the matter and submit proposed findings of fact and conclusions of law to the District Court, subject to review de novo of those matters to which the parties timely and specifically object.[6] The intervenors, however, urge the Court instead to abstain and to permit the matter to be determined in state court. They rely on the discretionary abstention provision of 28 U.S.C. § 1334(c)(1), under which a District or Bankruptcy Court may abstain from hearing a matter within its jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law."[7] They argue that abstention is appropriate for two reasons: comity, because the complaint raises issues of state law that remain unsettled in Massachusetts and involves issues of public policy in Massachusetts, requiring federal deference to the state courts; and judicial economy, because, without core jurisdiction, this Court's proposed findings and rulings will be subject to de novo review in the district court, and because this proceeding cannot include related claims that are outside this court's jurisdiction or expertise, necessitating more proceedings than would be necessary in state probate court.

---

5. The Co–Trustees have not indicated whether they consent to this Court's entry of final judgment in this matter, but consent must be unanimous, so the intervenors' non-consent is dispositive.

6. See 28 U.S.C. § 157(c)(1) (bankruptcy court may hear non-core proceeding that is otherwise related to a bankruptcy case and shall enter proposed findings of fact and conclusions of law) and F.R.Bankr.P. 9033 (requiring specific objections within ten days of service).

7. At the hearing on its motion to abstain, the First Church of Christ, Scientist, indicated that it was relying solely on § 1334(c)(1) (discretionary abstention) and not on § 1334(c)(2) (mandatory abstention). The latter would not apply here. One or both of the intervenors did commence a postpetition proceeding in Massachusetts Probate Court to determine the issue presented here, but that proceeding was commenced without relief from the automatic stay. No state proceeding has been validly commenced with respect to the subject matter of this proceeding.

This Court will deny the motion to abstain.[8] Had the intervenors moved expeditiously in state court for an adjudication of the matter now at issue and of the related matters that, one year into this adversary proceeding, they still have not filed, this Court might be more sympathetic to their plea for abstention. But they have not done so. The Debtor was given no notice of its rights under the Trusts until over two years after Ms. Krauss's death and sixteen months after the commencement of this bankruptcy case. The intervenors never commenced a state court action prior to the Debtor's Chapter 11 filing. In fact, the intervenors waited over fifteen months after the filing of the Debtor's petition before filing suit, and even then they failed first to seek relief in this Court from the automatic stay, or from the equivalent injunction in the Debtor's confirmed liquidating plan and in the order confirming it.[9] This Court is confident that it can adjudicate the matter as expeditiously as could the state court. Review de novo of the findings of fact may not be necessary, depending on whether facts are materially in dispute and on how this Court resolves them; and, as for rulings of law, de novo review is the same standard as the District Court would normally apply on appeal (as opposed to review under 28 U.S.C. § 157(c)(1)). The state law issues presented here, though perhaps not thoroughly settled, are not *unusually* difficult, novel, or sensitive—they are well within the range of state law issues with which the bankruptcy court must regularly contend. And the Attorney General, though served with the complaint and named as a defendant, has not taken an active role in this proceeding. In short, the case for abstention is weak and is more than overcome by countervailing concerns arising from delay, lack of notice, and failure to seek relief from stay on the part of the intervenors.

### ORDER

For the reasons set forth above, the Motion of First Lutheran Church to Dismiss is DENIED, and The Motion of The First Church of Christ, Scientist, to Abstain, is DENIED.

---

8. In essence, the Court decided against abstention when, earlier in the case, it denied the intervenors' motion for relief from stay to go forward on their (already-filed) complaint in state court.

9. The plan and the order confirming it, entered January 18, 2000, vested the property of the estate in the Debtor but provided for continuation of the automatic stay as to such property and expressly enjoined commencement of any action with respect to property of the estate.